615 A.2d 1298

Glenn C. KEPPLE and Nora G. Kepple, his wife, Appellees,

v.

FAIRMAN DRILLING COMPANY, a partnership.

Appeal of the PEOPLES NATURAL GAS COMPANY.

Robert A. BRICMONT, Attorney in
Fact for Florence M. Burkley

v.

The PEOPLES NATURAL GAS COMPANY, a corporation
Fairman Drilling Company, a partnership; and Glenn
C. Kepple and Nora G. Kepple, his wife.

Appeal of the PEOPLES NATURAL GAS COMPANY.

Wesley L. POMPOSINI, Appellant,

v.

T.W. PHILLIPS GAS AND OIL COMPANY, T.W. Phillips
Gas and Oil Co., a Pennsylvania Corporation, and
B.D. Phillips, Jr., Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 23, 1992.

Decided Nov. 10, 1992.

John R. Kenrick, Susan L. Wormer, Eckert, Seamans, Cherin & Mellott, Susan G. George, Peoples Natural Gas Co., Pittsburgh, for appellants in Nos. 54 and 55.

Kenneth W. Behrend, Behrend & Ernsberger, Pittsburgh, for appellant in No. 86.

George A. Conti, Jr., Greensburgh, for Glenn C. Kepple and Nora G. Kepple.

Denis P. Zuzik, Greensburgh, for Robert Bricmont and Florence Burkley.

Carolyn Branthoover, Bruce Wiegand, Kirkpatrick & Lockhart, Pittsburgh, for appellees in No. 86.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

These appeals were consolidated to address the common issue of whether the courts below properly construed Act No. 60, P.L. of July 20, 1979, (as codified at 58 P.S. § 33–35 (Supp.1990)) in deciding that the Act could be applied retroactively so as to require a state mandated increase in gas and oil royalties to override valid lease agreements which were entered into prior to the enactment of the statute. The Act provides as follows:

> *Section 1.* A lease or other such agreement conveying the right to remove or recover oil, natural gas or gas of any other designation from lessor to lessee shall not be valid if such lease does not guarantee the lessor at least one-eighth royalty of all oil, natural gas or gas of other designations removed or recovered from the subject real property.
>
> *Section 2.* An oil, natural gas or other designation gas well or oil, natural gas or other designation gas lease which does not provide a one-eighth metered royalty shall be subject to such an escalation when its original state is altered by new drilling, stimulation, hydraulic fracturing or any other pro-

cedure for increased production. A lease shall not be affected when the well is altered through routine maintenance or cleaning.

*Section 3.* Whenever such an increased production procedure has been completed prior to the effective date of this act, metering and the above royalty shall commence within 90 days after the effective date of this act.

*Section 4.* This act shall take effect in 60 days.

1979, July 20, P.L. 183, No. 60, § 3, effective in 60 days.

We also will address an additional issue raised in *Kepple v. Fairman*, which is whether a court of equity has the power to ignore established principles of law and unilaterally modify a valid legal agreement when it believes that the "equities of the case" justify such a modification.

We begin by briefly recounting the facts and procedural history of the separate cases.

### No. 54 W.D. APPEAL DOCKET 1991 and
### No. 55 W.D. APPEAL DOCKET 1991

These consolidated appeals are from the final decree of the Court of Common Pleas of Westmoreland County. On October 11, 1957, Cecilia and Florence Burkley ["the Burkleys"] entered into an oil and gas lease (No. 58019) with Appellant, the Peoples Natural Gas Company ["Peoples"], for a period of ten (10) years and so long thereafter as the land was operated in the search for or production of oil or gas. The lease was duly recorded and covered a tract of land consisting of 126.905 acres. The Burkleys owned 65 acres of land subject to the lease. The lease provided in relevant part for a payment of a flat rate royalty of $75.00 each three months in advance for shallow gas wells and a royalty equal to one-eighth ($\frac{1}{8}$) of the value of all gas produced, saved and marketed from deep gas wells. Pursuant to the lease, Peoples drilled a shallow gas well [No. 5282, "Peoples well"]. Although drilling was completed in May of 1978, gas production from this well did not commence until February 12, 1979, at which time a pipeline was installed to transport production.

In 1971, the Burkleys conveyed 25 acres of their land to appellees Mr. and Mrs. Glenn C. Kepple. The Kepples believed that the Burkleys had conveyed gas drilling rights with the land. Unaware of the prior conveyance of those rights to Appellant Peoples, the Kepples, entered into an oil and gas lease with Fairman Drilling Company ["Fairman"] on August 7, 1978. Fairman, while preparing to drill two shallow gas wells on the Kepple property, learned of the Peoples/Burkley lease. Thereafter, Peoples and Fairman entered into negotiations which resulted in a "farm-out" arrangement whereby Fairman was permitted to drill two wells and Peoples agreed to purchase the gas produced from these two wells [OS 39267 and OS 39268, "Fairman wells"]; Fairman was responsible for royalty payments to the appropriate lessors. The Fairman wells were drilled on the Kepple property in April of 1979, and production commenced on August 4, 1980.

In 1981, the Kepples instituted suit (Docket No. 5220 of 1981) against Fairman claiming they were owed a one-eighth royalty on the production from the Fairman wells; the Kepples also asserted a royalty claim against Peoples for production from the Peoples well No. 5282. In December of 1982, Bricmont, on behalf of Florence Burkley, commenced an action in equity (Docket No. 7520 of 1982) against Peoples, Fairman, and the Kepples for an accounting. These two actions were consolidated for trial.[1]

The Honorable Charles H. Loughran of the Court of Common Pleas of Westmoreland County rendered his findings of fact and conclusions of law, and a *decree nisi* was entered. In the action docketed at 5220 of 1981, a verdict was entered in favor of Fairman and against the Kepples. Judge Loughran found that the Kepples had received gas royalty rights to the 25 acre tract conveyed by the Burkleys and thus were entitled to a portion of the royalties paid by Peoples for production from Well No. 5282. In the action docketed at 7520 of 1982, the court determined that Bricmont, on behalf of Florence

---

1. At the time of Oral Argument, a settlement agreement was entered into between Robert Bricmont, Attorney in Fact for Florence M. Burkley and Peoples Natural Gas Company. The only remaining dispute at Docket No. 7520 of 1982 is between Peoples and the Kepples.

Burkley, was entitled to a one-eighth royalty as opposed to a flat rate, as applied by Peoples; the court ordered an accounting to determine the percentages of interest owned by the parties, and the quantities of gas and any payments due from the various wells.

Appellant Peoples filed exceptions, alleging that the trial court erred in its findings and conclusions, and that the trial court erred in applying a one-eighth royalty when the contract lease agreement between the parties called for a flat rental payment. These exceptions were denied by final decree which was entered on July 6, 1990.

In affirming the trial court, the Superior Court simply adopted the trial court's opinion and concluded without discussion that based upon review of the record, the applicable law and the parties' briefs, there was no error of law or abuse of discretion in the trial court's application of the law to this case. 410 Pa.Super. 662, 590 A.2d 381. The Superior Court also found the trial court's findings of fact to be supported by the record. Further, the Superior Court stated that a court in equity has the power to shape and render a decree which accords with the equities of the case and to frame any proper relief agreeable to the case pleaded and proven. Judge McEwen filed a dissenting opinion stating that he differed in his analysis of the Act of July 20, 1979, P.L. 183, No. 60, 58 P.S. §§ 33–34. This appeal followed.

## 86 W.D. APPEAL DOCKET 1991

Appellant Pomposini is the owner of a 175 acre tract of land which is subject to an oil and gas lease entered into on February 16, 1946. The lease in relevant part provides that respondent is entitled "to have and to hold said premises for the sole and only purpose of drilling and operating for oil and gas." The lease further provides that, in consideration for the right to conduct oil and gas operations on the property, Appellee, T.W. Phillips Gas and Oil Co., would pay a specified amount in quarterly installments to the lessor, Appellant Pomposini.

Beginning in 1953, Appellee drilled a gas producing well on the property and utilized it in 1954 for 62½ days. The well was used as a storage reservoir into which gas was injected and stored. During Appellee's use of the well for the storage of gas, the well continued to produce small amounts of gas. Since 1981, respondent has utilized the well exclusively for the production of gas.

From 1954 to October 1979, petitioner accepted quarterly payments from Appellee of $18.75 ($75.00 per year), in the belief that the payments were for the production of gas. When Appellant learned that. the well was being used for storage purposes, he filed this action seeking compensatory and punitive damages alleging that he was a victim of an unauthorized and fraudulent use of the well for storage.

The trial court determined that the use of the well for storage was a use outside of the scope of the lease and therefore awarded petitioner $14,850.00 for the fair rental value of the well during the time in which it was used primarily for storage purposes. Appellant filed Post–Trial Exceptions and a Motion for Post–Trial Relief arguing, *inter alia*, that the trial court erred in not awarding any damages to Pomposini based upon the continued production of gas from the well and also by finding against Pomposini on his fraud and punitive damages claim. The trial court denied Pomposini's Motion for Post–Trial Relief on April 7, 1989. Appellant Pomposini then appealed to the Superior Court which affirmed the trial court's decision and in addition, awarded him a sum, pursuant to the rental agreement, for royalties for the gas produced by Appellee.[2]   397 Pa.Super. 564, 580 A.2d 776.

On November 16, 1990, Appellant Pomposini filed a Petition for Allowance of Appeal, requesting this Court to determine if the Superior Court erred in awarding Appellant royalties

---

**2.** Originally the trial court determined that the amount of gas injected into the well could not be separated with certainty from the amount of natural gas produced and stored. The Superior Court, guided by precedent from other jurisdictions, determined that payment should be made without regard to whether the gas was native or injected from a foreign source. *Humble Oil & Refining Co. v. West*, 508 S.W.2d 812 (Texas 1974).

pursuant to the rental agreement instead of the royalty rate established by Act No. 60 and by case law.

We granted the Petition for Allowance of Appeal in the preceding cases and consolidated them for argument.

STANDARD OF REVIEW:

The standard of review of an appellate court when reviewing the findings of a court in equity is well established. In *Moser v. DeSetta,* 527 Pa. 157, 162, 589 A.2d 679, 681 (1991), this Court stated:

> "[n]ormally, appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion." A final decree in equity will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. Further, "[t]he test is not whether we, the appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witnesses, 'but whether a judicial mind, on due consideration of the evidence, as a whole, could reasonably have reached the conclusion of the chancellor.'" *Estate of Masciantonio,* 392 Pa. 362, 367, 141 A.2d 362 (1958) (citation omitted).

Facts found by the chancellor, when supported by competent evidence in the record, are binding. However, no such deference is mandated for conclusions of law, and we are at liberty to review such conclusions. *Presbytery of Beaver–Butler of United Presbyterian Church v. Middlesex Presbyterian Church,* 507 Pa. 255, 266, 489 A.2d 1317, 1323 (1985).

In *Kepple v. Fairman,* No. 54 W.D. Appeal Docket 1991 and *Bricmont v. The Peoples Natural Gas Co.,* No. 55 W.D. Appeal Docket 1991, the trial court not only applied Section 3 of Act No. 60, P.L. 183 (58 P.S. § 35) to Peoples Well No. 5282, requiring Appellant Peoples to pay one-eighth (⅛th) royalty 90 days after the effective date of the Act, the trial court also applied the Act retroactively to require Peoples to pay the Kepples and Bricmont one-eighth royalty together with any interest for Peoples Well No. 5282 from the date the well commenced producing gas on February 12, 1979.

■ Appellant Peoples argues that Act No. 60 should not be applied to the present case because it interferes with prior existing contracts and, therefore, is improper and violates the contracts clauses of the state and federal constitutions. However, this argument attacks the constitutionality of Act No. 60 on its face. We find that appellant has waived this constitutional argument by failing to notify the Attorney General pursuant to Pa.R.C.P. 235 and Pa.R.A.P. 521.[3] See, *In re Adoption of P.,* 480 Pa. 79, 90, 389 A.2d 94, 100 (1978), *Butler v. Rolling Hill Hosp.,* 382 Pa.Super. 330, 333, 555 A.2d 205, 207 (1989), *Faust v. Messinger,* 345 Pa.Super. 155, 159, 497 A.2d 1351 (1985), *appeal dismissed,* 514 Pa. 286, 523 A.2d 741, *Smith v. Smith,* 365 Pa.Super. 195, 198, 529 A.2d 466, 467 (1987), *appeal denied,* 517 Pa. 618, 538 A.2d 500 (1988), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 924 (1988).

■ Appellant Peoples further challenges the application of Act No. 60 to the well at issue. Appellant argues that the lower courts incorrectly construed and therefore misapplied Act No. 60 to the Lease involved in these cases. Generally, Act No. 60 provides that royalties from oil or natural gas wells or gas leases are subject to escalation within 90 days after the effective date of the Act, or by December 17, 1979, when certain "increased production" procedures—such as artificial stimulation and hydraulic fracturing—have been completed prior to the effective date of the Act. *See* 58 P.S. §§ 33–35 (Supp.1990). Peoples Well No. 5282 was drilled in May, 8, 1978 and was hydrofractured or stimulated on May 15, 1978. Thus, the trial court states that at worst, a one-eighth (⅛th) royalty would be payable on Well No. 5282 from and after December 17, 1979.

Appellant Peoples argues that Well No. 5282 was a new well—drilled in May 1978. At the time it was drilled, a time

3. Appellant Peoples argues that the Act is constitutional on its face but it violates the United States and Pennsylvania Constitutions only as it applies to prior existing contracts. If Appellant's argument was confined only to application, notice to the Attorney General would not be required. However, Appellant's argument, in fact, attacks the constitutionality of the Act on its face. Thus, notice was necessary and Appellant Peoples has waived this argument.

when there was no production, it was stimulated. Production of gas from Well No. 5282 first occurred in February 1979, some eight months after it was stimulated. Thus, Peoples argues that there was no stimulation of an existing well for the purpose of increasing the production that had occurred previously from that well and the terms of Sections 2 and 3 of Act No. 60 are inapplicable in this case.

We find the trial court's reliance on Sections 2 and 3 of Act 60 to be correct. Under Act No. 60 it is immaterial whether the procedures for increasing production occur days, months or years after the drilling of the well. Act No. 60 does not set any temporal limitations. It would not be logical to conclude that the legislature only intended to escalate royalties for wells that were stimulated after a period of time. Likewise, it would not be logical to conclude that a well stimulated immediately upon drilling would not be subject to escalation whereas a well stimulated 6 months later would be subject to escalation. Therefore, we find that Appellant Peoples must pay one-eighth (⅛th) royalties at least from December 17, 1979.

■ As to Peoples second issue, Peoples argues that the court abused its discretion in unilaterally modifying the terms of the 1957 lease from a flat fee to one-eighth (⅛th) royalty. The trial court based its decision on the fact that Peoples offered to modify the lease with the Burkleys to one-eighth (⅛th) royalty by letter dated August 3, 1978, at a time when one of the Burkleys had passed away and Peoples knew, or should have known that the surviving Burkley was of advanced years. The court stated that the Kepples were never requested to execute a lease modification and, accordingly, their failure to do so cannot be held against them. Further, the trial court stated, without the benefit of citing existing case law, that a unilateral contract change does not require an acceptance where the change is in the nature of payments in excess for those called for in the contract. Appellant Peoples argues that an equity court does not have the power to ignore established principles of law and unilaterally modify a valid legal agreement when it believes that the "equities of the case" justify such a modification.

It is well settled law that a court in equity must follow the law. *First Federal Savings and Loan Ass'n v. Swift,* 457 Pa. 206, 212, 321 A.2d 895, 898 (1974); *Bauer v. P.A. Cutri Co.,* 434 Pa. 305, 310, 253 A.2d 252, 255 (1969). A court in equity does not have the legal or equitable power to make a contract for the parties. *Albright v. Albright,* 228 Pa. 552, 560, 77 A. 896, 898 (1910).

We find that the trial court retroactively applied Act No. 60 to the time prior to its enactment when a valid lease existed between the parties, thereby ignoring standard principles of contract law. In effect, this created a new contract between the parties which is contrary to existing law. Further, it is well established in Pennsylvania that no statute shall be construed to be retroactive unless clearly and manifestly intended by the General Assembly. *Krenzelak v. Krenzelak,* 503 Pa. 373, 380, 469 A.2d 987, 990 (1983). Section 3 of the Act does not, by its terms, require the escalation of royalties until a 90 day period *after* the effective date of the Act.

Thus, we hold that the trial court engaged in an arbitrary and capricious abuse of its equitable powers when it altered the terms of a valid lease between the parties and required Peoples to pay one-eighth (⅛th) royalty instead of the flat fee as provided for in the lease from the time the well began producing gas, or February 12, 1979 to the 90 day effective date of the Act, or December 17, 1979.

In *Pomposini v. T.W. Phillips Gas and Oil Co.,* No. 86 W.D. Appeal Docket 1991, the Habendum Clause of the Pomposini/Phillips Lease provides for the Lease to continue in full force and effect for so long as gas is produced in paying quantities or "operations" for gas are being conducted on the property. The Superior Court found the lease agreement between the parties to be valid and awarded the Appellant Pomposini royalties for gas produced after 1981 consistent with the terms of the 1946 lease. Appellant Pomposini argues that because there were no "operations" for gas as required by the 1946 lease, the lease terminated at the expiration of the original twenty (20) year term in 1966 and thus, the Superior Court erred in choosing a rate consistent with the terms of the

lease and the Superior Court should have applied a one-eighth (⅛th) royalty rate as prescribed by statute (Act No. 60, 58 P.S. §§ 33–35) and case law.[4]

The trial court found that the 1954 well continued to produce gas before and after 1974, while it was also being used to store additional gas and that, "[i]n using the well for storage purposes, Phillips injected and withdrew gas from the well as it was needed." *Pomposini v. T.W. Phillips Gas and Oil Co.*, 397 Pa.Super. 564, 580 A.2d 776, 789, *appeal granted* 528 Pa. 631, 598 A.2d 284 (1991). Based upon the trial court's findings of fact, the provisions of the Lease and the history of Phillips' gas operations with respect to the leased premises, the Superior Court specifically found that the Lease continued in full force and effect at all times because Phillips' gas operations have continued uninterrupted since 1954. We find the lower court's findings to be supported by the record. Thus, the Superior Court did not abuse its discretion in finding the Lease to be valid.

We further find Act No. 60 to be inapplicable under the facts of this case. Section 1 of the Act (58 P.S. § 33) only applies to leases executed after the effective date of the Act, or September 20, 1979. Sections 2 and 3 (58 P.S. §§ 34–35) only apply where the volume of production from an existing well is increased by some procedure for increased production. The Well was drilled in 1954, long before the passage of the Act, and Pomposini presented no evidence to the trial court below to even suggest that the original state of the Well was, at any time, altered by one or more of the procedures designed to increase production within the meaning of the Act.

We find that the Lease was in full force and effect during the two periods of time when the Superior Court found that Pomposini was entitled to recover royalties for gas production under the Lease: from 1954 to 1981 when the well was used primarily for storage purposes but was also operated to

4. In Appellant Pomposini's brief, Appellant also states claims for fraud and punitive damages. These claims, however, are not properly before this Court because Pomposini did not raise them in his Petition for Allowance of Appeal to this Court.

produce natural gas, and subsequent to 1981, when the well was used solely for production purposes. Therefore, we find the Superior Court's determination of royalties consistent with the lease to be correct.

We now reverse that portion of the Superior Court's order in *Kepple v. Fairman Drilling Company* and *Bricmont v. The Peoples Natural Gas Company,* Nos. 54 and 55 W.D. Appeal Dockets 1991 which requires Peoples to pay a one-eighth (⅛th) royalty for Peoples Well No. 5282 before the effective date of Section 3 of Act No. 60. Simultaneously, we affirm the order of the Superior Court in *Pomposini v. T.W. Phillips Gas and Oil Co.,* No. 86 W.D. Appeal 1991. We remand all cases to the trial court for a determination of damages consistent with the foregoing opinion.

NIX, C.J., and CAPPY, J., concur in the result.