J-A09034-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN L. MCCLAIN AND MITCHELL PRINCE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MICHAEL V. POWER AND THERESA POWER, | |
| Appellees | No. 1933 EDA 2013 |

Appeal from the Order Entered May 3, 2013
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 11-6035

BEFORE:  BOWES, J., OTT, J., AND JENKINS, J.

MEMORANDUM BY: JENKINS, J.          **FILED SEPTEMBER 18, 2014**

John McClain and Mitchell Prince filed an action in equity to compel reformation of a deed relating to residential property located at 624 Montgomery School Lane in Lower Merion Township, Montgomery County ("the property").  The trial court granted in part and denied in part their requests for relief.  McClain and Prince filed timely post-trial motions, which the trial court denied, and they appealed to this Court[1].  We affirm.

---

[1] Although McClain and Prince did not reduce the court's decision to judgment at the time they filed their notice of appeal, they subsequently perfected their appeal by filing a praecipe to reduce the decision to judgment.  **See** Pa.R.A.P. 905(a)(5) ("a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

1

I.

In essence, McClain and Prince assert that there are material defects both in the deed that Michael and Theresa Power conveyed to them on July 22, 2005 and in a deed of correction that the Powers executed on July 14, 2010. McClain and Prince requested that the trial court compel the Powers to issue another deed of correction which

(1) states that the property consists of **two** lots ("Lot A" and "Lot B") (also referred to below as an "A/B parcel" or an "A/B legal description"), and

(2) conveys the property to McClain and Prince as joint tenants with right of survivorship.

McClain's and Prince's reason for desiring an A/B legal description is somewhat elusive. McClain's and Prince's house stands on the portion of the property known as Lot B. It appears that when Wells Fargo began a foreclosure action against McClain and Prince in 2009, McClain learned that the 2005 deed's legal description only included Lot A, an empty buffer lot. The 2005 deed did not have an A/B legal description. McClain and Prince seem to believe that inclusion of an A/B description would help their defense in the foreclosure action by enabling them to assert that Wells Fargo never intended to mortgage Lot B and could only foreclose on the empty lot, Lot A. We are uncertain whether this theory makes sense. But whether it does or

not, we still must fulfill our duty of summarizing what the trial court did in response to this action and analyze whether it reached the proper result.

The Powers, for their part, contend that the correct legal description of the property is a single consolidated parcel, not an A/B parcel, because they eliminated the A/B legal description in a deed of consolidation that they recorded three years before selling the property to McClain and Prince.

McClain and Prince filed a three-count complaint seeking reformation of the deed, declaratory judgment and *vacatur* of the 2010 deed of correction. Although this controversy arose in Montgomery County, McClain and Prince prosecuted their lawsuit in Delaware County, because Delaware County is where the Powers now reside. Following a non-jury trial, the court ordered the Powers to deliver a corrected deed to McClain and Prince which conveyed the property to them as joint tenants with right of survivorship[2]. The court also ordered that the corrected deed include the legal description advocated by the Powers, i.e., a description of the property as a single consolidated parcel.

In their appellate brief, McClain and Prince focus mainly on the court's ruling on Count I of the complaint, an equitable claim to reform the deed to include an A/B legal description, and add several short arguments relating to Count III. The brief does not address their declaratory judgment request in Count II of the complaint. Therefore, we will not address Count II below.

---

[2] This portion of the order is not at issue in this appeal and thus does not require further analysis.

II.

When reviewing the findings of a court in equity, this Court's review "is limited to a determination of whether the chancellor committed an error of law or abused his discretion. A final decree in equity will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." ***Kepple v. Fairman Drilling Co.,*** 615 A.2d 1298, 1302 (Pa.1992). Although facts found by the chancellor, when supported by competent evidence in the record, are binding, no such deference is required for conclusions of law, which we review *de novo.* ***Id.***

III.

The following is a summary of the evidence adduced during trial and the court's findings.

**The Powers purchase the property in 2001.** On November 15, 2001, the Powers purchased the Property by deed which is registered with Lower Merion Township and recorded in Montgomery County, Pennsylvania[3]. The deed's legal description of the Property described two parcels: a Premises "A" ("Lot A"), a 50 feet by 205 feet parcel, and a Premises "B", an adjoining parcel measuring 100 feet by 205 feet with a home on it ("Lot B")[4].

---

[3] Exhibit P-12 (November 15, 2001 deed).
[4] ***Id.***, exhibit A (legal description in 2001 deed).

4

**The 2002 deed of consolidation.** In 2002, the Powers decided to install a swimming pool on the premises[5]. The Powers learned that they needed to satisfy the Township's impervious surface requirement in order to obtain a pool permit[6]. The only way to satisfy the impervious surface requirement was to consolidate Lots A and B into a single parcel[7].

The Powers hired Jade Abstract Company to prepare a deed of consolidation[8]. Jade Abstract prepared a deed that consolidated Lots A and B into a single parcel by removing the line separating Lot A from Lot B[9]. On July 5, 2002, the Township reviewed the deed of consolidation and stamped its approval on the deed[10]. One week later, the Township issued the swimming pool permit[11]. Michael Power filed the deed with the Montgomery County Recorder of Deeds[12], and the deed was recorded in Deed Book 5414, Page 2400[13].

The recorded deed of consolidation refers to a Mesko Associates stamped drawing dated June 11, 2002, the same drawing that was in Jade

---

[5] N.T. 2, pp. 277-78 (Michael Power). Trial in this case lasted two days. All references to "N.T. 1" are to the first day of trial. All references to "N.T. 2" are to the second day of trial.
[6] *Id*., pp. 277-78, 316 (Michael Power).
[7] *Id.*
[8] *Id.*, pp. 278-83 (Michael Power).
[9] N.T. 2/12/13, pp. 281-83, 319 (Michael Power); Exhibit P-16 (deed of consolidation), D-2 (Jade Abstract documents).
[10] Exhibit P-16 (deed of consolidation).
[11] Exhibit D-2 (Jade Abstract documents); *see also* N.T. 2, pp. 281, 286, 321-22 (Michael Power).
[12] N.T. 2, p. 317 (Michael Power).
[13] Exhibit P-16 (deed of consolidation).

Abstract's documents[14]. The drawing states: "Lot line to be removed on the line dividing Premises A from Premises B."[15] Although the drawing was two pages, the Recorder of Deeds recorded only one of the pages. The left half, with the words "lot line to be removed," was not recorded[16]. The recorded version of the Mesko document does not say "lot line to be removed"[17].

Despite this omission, the trial court found that the consolidation deed consolidated the lands previously segregated as Lots A and B. The evidence supports this finding. As noted above, Lot A was 50 feet by 205 feet, and Lot B was 100 feet by 205 feet. The boundary lines in the deed of consolidation's legal description were 150 feet by 205 feet[18] -- a combination of Lots A and B[19] -- and McClain admitted that the boundary lines were a "complete closed description" of the property[20]. Moreover, as the trial court found, the deed was properly recorded in the Recorder of Deeds and "describes as <u>one</u> parcel those lands previously described upon the public record as <u>two</u> parcels."[21] [22]

---

[14] Exhibit P-16 (deed of consolidation), D-2 (Jade Abstract documents).
[15] Exhibit D-2 (Jade Abstract documents); N.T. 2, p. 324 (Michael Power).
[16] Exhibit P-16 (deed of consolidation).
[17] *Id*.
[18] Exhibit P-16; N.T. 2, pp. 118-31 (McClain).
[19] N.T. 2, pp. 118-31 (McClain).
[20] N.T. 2, p. 128 (McClain).
[21] Trial Court Opinion, p. 7; *see also id.*, p. 8 (finding "sufficient evidence of the 2002 deed [of consolidation] and its effect on the property to prove its effect on title [later] received by [McClain and Prince]").
[22] McClain and Prince also argued that the deed of consolidation only described Lot A, but not Lot B, due to its language that the entire property was bounded "by the land of Rush D. Touton." Given the court's ultimate

**McClain and Prince agree to purchase the property in 2005.** On May 22, 2005, McClain and Prince toured the property and offered $950,000 to purchase it[23]. The Powers rejected the offer[24]. On May 24, 2005, McClain and Prince raised their offer to $1,100,000. According to McClain, they raised their offer because Michael Power told them that the property contained two lots and gave them several documents that showed two lots, consistent with the A/B description in the 2001 deed[25]. Michael Power testified, however, that he never had any such discussion with McClain and Prince; instead, he only discussed the pervious versus impervious surface issue with them and gave them documents to show what he meant about this issue. Although the court did not explicitly state whom it believed, its ultimate decision suggests that it credited Michael Power's version of events.

On May 24, 2005, following the higher offer, the parties entered into an agreement of sale[26]. All discussions between the parties about the property took place before they signed the agreement of sale[27].

McClain reviewed the agreement of sale and seller's disclosure statement at least once and understood both documents at the time he

---

ruling in favor of the Powers, we infer that it did not accept this argument. For further discussion of this subject, ***see*** pp. 21-22, ***infra.***
[23] N.T. 2, p. 163 (McClain).
[24] ***Id***.
[25] N.T. 1, p. 97, 99-106 (McClain); Exhibits P-5 (Mesko sketch plan), P-6 (neighborhood plot plan), P-7 (Mesko "as built" plan).
[26] Exhibit P-2 (agreement of sale).
[27] N.T. 2, p. 178 (McClain).

signed the agreement of sale. He admitted that the property had only one address, 624 Montgomery School Lane, and only one parcel number[28].

Paragraph 26 of the agreement provided:

> Representations: (A) Buyer understands that any representations, claims, advertising, promotional activities, brochure or plans of any kind made by Seller, Brokers, their licenses, employees, officer or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. It is further understood that this Agreement contains the whole agreement between Seller and buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this Sale. Furthermore, this Agreement will not be altered, amended, changed, or modified except in writing executed by the Parties[29].

McClain agreed that neither the agreement of sale nor the seller's disclosure statement made any specific reference to Parcels A and B or the property's metes and bounds description[30]. Nor was there anything in writing promising to convey a deed that specifically referenced Lot A and Lot B[31].

Prince admitted that when he signed the agreement of sale, he did not know that there had been two lots identified separately as Premises "A" and Premises "B"[32]. Nor did McClain say anything to Prince prior to closing that the deed should have separate descriptions for Lots A and B[33]. Furthermore,

---

[28] N.T. 2, p. 139 (McClain).
[29] Exhibit P-2 (agreement of sale).
[30] N.T. 2, pp. 155-58 (McClain).
[31] N.T. 2, pp. 230, 297 (Michael Power).
[32] N.T. 2, p. 355 (Prince).
[33] N.T. 2, pp. 228, 342 (Prince).

Michael Power testified that he did not promise McClain that the deed would identify and define Lots A and Lot B separately[34]. Power added that it was impossible for him to make such a promise, because he had already recorded the deed of consolidation that eliminated Lots A and B[35]. Although the court did not explicitly state that it believed Power's testimony on this point, its ultimate decision in favor of the Powers suggests that it credited Power's testimony.

McClain and Prince approached Patrick Keenan, a mortgage banker and branch manager at Wells Fargo and a good friend of McClain, to arrange a loan of $825,000 for the purchase of the property[36]. Keenan had no knowledge at any time during this transaction that there were two parcels on the property or whether the mortgage would relate to both parcels. At no time did McClain or Prince mention that there were two parcels or indicate that they only wanted this substantial mortgage to relate only to Lot A, the empty lot[37]. Nor would Wells Fargo have willingly loaned this amount only for Lot A[38]. McClain admitted that he gave the bank no reason to believe he really only meant for the mortgage to cover Lot A[39]. Prince assumed, when he applied for the mortgage, that the mortgage covered the

---

[34] N.T. 2, p. 293 (Michael Power).
[35] N.T. 2, p. 293 (Michael Power).
[36] N.T. 1, p. 43 (Keenan).
[37] *Id*., p. 43 (Keenan); N.T. 2, p. 186 (McClain).
[38] N.T. 1, p. 46 (Keenan).
[39] N.T. 2, p. 190 (McClain).

entire property[40]. Prince knew that Wells Fargo's decision to give a mortgage depended on the value of the entire property, including both lots[41].

McClain and Prince had the duty under the agreement of sale to order the title insurance commitment and policy[42]. McClain obtained title insurance from Stewart Title Insurance, which issued a five page title commitment several days before settlement[43]. Schedule C on the fifth page recites the Lot A/B description in the Powers' 2001 deed[44]. The fifth page ends in the middle of a sentence, "being the same premises which Kathleen M. Valentine... by deed dated 11/15/2001. . ."[45] At the bottom of the page appear the words, "new legal to be faxed from sender."[46] Thus, the title commitment was incomplete. Moreover, the title commitment never mentions the 2002 deed of consolidation[47]. The court found: "Through the apparent carelessness of their title searcher, [McClain and Prince] did not receive actual notice of the existence of the 2002 deed and its consolidation of [Lots A and B] into one parcel."[48]

---

[40] N.T., 2, p. 344 (Prince).
[41] N.T. 2, p. 346 (Prince).
[42] Exhibit P-2, ¶ 15(b) (agreement of sale).
[43] Exhibit P-9 (title commitment); N.T. 1, p. 120 (McClain); N.T. 2, p. 5 (McClain).
[44] Exhibit P-9 (title commitment).
[45] *Id*.
[46] *Id.*
[47] *Id.*
[48] Trial Court Opinion, p. 7.

Neither McClain nor Prince testified that they told the title agent that they expected the deed from the Powers to include the A/B description that was within the 2001 deed.

**The deed from the Powers to McClain and Prince**.  On July 22, 2005, the Powers conveyed title to the property to McClain and Prince. According to McClain, the legal description in the deed presented at closing encompassed the land in both Lot A and Lot B, but the deed that was later recorded mysteriously changed the legal description to include only the land within Lot A[49].  Furthermore, McClain testified that Michael Power reviewed Stewart Title's commitment[50] during closing, including Schedule C's description of separate lots A and B, but said nothing[51].  The court's opinion was silent with regard to McClain's testimony on these subjects.  Since the court ultimately found in favor of the Powers, the obvious inference is that it did not credit McClain's testimony.

The trial court agreed that the legal description in the recorded deed limiting the property to Lot A was not accurate[52].

---

[49] N.T. 2, pp. 68-69 (McClain); **see also** exhibit P-13 (recorded 2005 deed describing only the land in Lot A); Brief for Appellants, p. 12 (claim in McClain's and Prince's brief that "somehow the '2001 Legal Description' [A/B] in the deed as conveyed and registered with Lower Merion Township was switched with another legal description before the deed was recorded with the Recorder of Deeds") & p. 16 ("somehow the legal description was switched just prior to recording").

[50] Exhibit P-9 (title commitment).

[51] N.T. 2, p. 69 (McClain).

[52] Trial Court Opinion, p. 4 ("the legal description contained in the deed of July 22, 2005 is in error and is not a complete closed description of the

Notably, the recorded deed referenced the deed of consolidation at the correct record number (Deed Book 5414, page 2400)[53]. The recorded deed also provided that McClain and Prince are joint tenants with right of survivorship[54].

In November 2005, McClain and Prince received a recorded copy of the 2005 deed[55]. McClain filed the copy in his cabinet without reviewing it[56].

**The 2009 foreclosure action.** In January 2009, Wells Fargo commenced a foreclosure action against the property[57]. In March 2009, U.S. Bank commenced a second foreclosure action[58]. At that point, McClain noticed that the legal description in the 2005 deed and the property description in the Wells Fargo mortgage only covered Lot A[59]. McClain realized Wells Fargo might not have a mortgage on the house on Lot B and could only foreclose on Lot A[60].

Six months later, Prince filed for bankruptcy with McClain as his attorney[61]. Schedule D of Prince's bankruptcy petition identified the

---

property; rather, it describes only what is identified as the former premises A portion of the property. . .").

[53] Exhibit P-13 (recorded 2005 deed). We note, however, that the 2005 deed states erroneously that the date of the deed of consolidation was July 3, 200_3_, and that its date of recording was July 5, 200_3_. *Id*.

[54] *Id*.

[55] N.T. 2, p. 70 (McClain).

[56] *Id*.

[57] N.T. 2, p. 219 (McClain).

[58] *Id*.

[59] *Id*.; exhibits P-13 (recorded 2005 deed), P-14 (mortgage).

[60] N.T. 2, pp. 70, 223 (McClain).

[61] N.T. 2, pp. 210, 220 (McClain).

property as an asset in which Wells Fargo had a collateral interest stemming from the loan[62]. He identified the collateral as "home" on the bankruptcy schedule[63].

**The 2010 deed of correction.** In 2010, Stewart Title Company contacted the Powers to inform them of an error in the 2005 deed's legal description[64]. On July 14, 2010, the Powers executed and recorded a deed of correction whose legal description mirrored the description in the 2002 deed of consolidation (i.e., no references to "Premises A" or "Premises B")[65]. The deed did not state that McClain and Prince were joint tenants with right of survivorship.

The Powers never delivered the deed of correction to McClain and Prince[66].

**Present action.** On August 5, 2011, McClain and Prince filed the present action to reform the 2005 deed through reinstatement of (1) the Lot A/B legal description that had been in the 2001 deed and (2) the joint tenant with right of survivorship language that had been in the 2005 deed.

After trial, the court determined that the Powers

> presented sufficient evidence of the 2002 deed and its effect upon the property to prove its effect upon title received by [McClain and Prince] on July 22, 2005. . .[The Powers] presented sufficient evidence

---

[62] N.T. 2, p. 346 (Prince).
[63] *Id*., p. 347 (Prince).
[64] *Id*., pp. 300, 313 (Michael Power).
[65] Exhibit P-15 (2010 deed of correction).
[66] N.T. 2, pp. 91-95 (McClain).

13

> of the absence of any mistake or misunderstanding on their part concerning the consolidation of [Lots A and B] into one parcel as described in the 2002 deed.[67]

"In the absence of mutual mistakes or misunderstandings," the court concluded, "there was no evidentiary basis to support a reformation of the legal description . . ."[68]

The court held that although McClain and Prince did not receive actual notice of the existence of the 2002 deed and its consolidation of the two parcels,[69] they were charged, as purchasers of the land, with constructive notice of every matter affecting their title appearing on any deed which formed an essential link in the chain of documents through which they took title.[70] McClain and Prince, the court stated, "presented no evidence to infer and prove the 2002 deed was not recorded and [was not] a link in the 'chain of documents' through which they took title to the property on July 22, 2005."[71]

The court thus ordered the Powers to execute and deliver a reformed deed which (1) provides that McClain and Prince are joint tenants with right of survivorship, and (2) describes the land conveyed as a single consolidated parcel in conformity with the 2002 deed of consolidation but excludes any

---

[67] Trial Court Opinion, p. 8.
[68] *Id.*
[69] Trial Court Opinion, p. 7.
[70] *Id.*
[71] *Id.*

reference to "lands of Rush Touton" from the legal description[72]. On May 8, 2013, the Powers filed a deed of correction that complied with the court's order.

IV.

The Argument section of McClain's and Prince's brief includes the following topics:

1. The Remedy to Correct the Admitted Recording Error is to Convey the Premises According to the Deed Describing Two Lots as Intended, Executed, and Conveyed by the Sellers.
2. The Powers Are Estopped from Asserting a Deed Contrary to the One as Conveyed.
3. The Verdict Improperly Exceeds the Scope of the Specific Relief Requested by the Plaintiffs.
4. The Court Can Not Compel the Recording of a Deed Contrary to Lower Merion Township's Ordinances.
5. This Case is Not Controlled by Constructive Notice of the Deed of Consolidation.
6. The First Deed of Correction Dated July 14, 2010 Must be Stricken.
7. The First Deed of Correction Dated July 14, 2010 Eliminates the Plaintiffs Rights to the Entire Parcel.
8. The Second Deed of Correction Dated May 8, 2013 Continues to Contain Errors.
9. The Powers Do Not Have the Ability to Execute the Deeds of Correction Because They do Not Hold Title.

This number of topics (9) differs from the number of issues in the Statement of Questions Involved (5) and from the number of issues in McClain's and Prince's Pa.R.A.P. 1925(b) statement of matters complained of on appeal (16). Nevertheless, we are satisfied that McClain and Prince preserved each of the nine topics in the Argument section for appeal. We also find that the

---

[72] Trial Court Opinion, p. 8.

organization of the brief does not impede appellate review. Therefore, we will review all 9 topics on the merits.

McClain's and Prince's first argument on appeal is as follows: "The remedy to correct a deed with an admitted recording error is to execute a new deed as intended, executed and conveyed by the sellers with two separate lots."[73] In their fifth argument, McClain and Prince state: "This case is not controlled by constructive notice of the deed of consolidation." We address these arguments together.

The thrust of these arguments is that the legal description in the July 22, 2005 deed was the product of mutual mistake, and the trial court, sitting in equity, had the power to correct the mistake by reforming the deed to include an A/B legal description. The trial court abused its discretion, McClain and Prince contend, by refusing to make this correction. We disagree.

Courts of equity

> have jurisdiction to reform deeds where mutual mistakes appear, but proof of the mutual mistake must be clear and positive. . .A party who seeks reformation on the ground of mutual mistake must establish in the clearest manner that the intention proffered as the basis for reformation of the deed existed and continued concurrently in the minds of the parties down to the time of the execution of the deed. . .If the evidence justifies such a finding of the intention of the parties, this finding may be made by the Chancellor.

---

[73] Brief for Appellants, p. 16.

16

*Dudash v. Dudash*, 460 A.2d 323, 326-27 (Pa.Super.1983). The doctrine of mutual mistake of fact occurs when the parties to the contract have "an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party." *Bianchi v. Bianchi*, 859 A.2d 511, 516 n. 3 (Pa.Super.2004). "A mutual mistake occurs when the written instrument fails to...set forth the 'true' agreement" of the parties. *Daddona v. Thorpe*, 749 A.2d 475, 487 (Pa.Super.2000), *appeal denied*, 761 A.2d 550 (2000). "[T]he language of the instrument should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Id.* (internal quotation marks and citation omitted).

When a mutual mistake occurs in a deed, the court, sitting in equity, should reform the deed to effectuate the intent of the parties. *Dudash*, *supra*, 460 A.2d at 326-27.

We conclude that the result reached by the trial court was well within its discretion, albeit for slightly different reasons than those given by the trial court.

The trial court asserted that there was no mutual mistake[74], but it still reformed the deed – a remedy which is possible only if there *was* a mutual mistake. *Dudash*, *supra*. We hold, with all due respect for the distinguished trial court, that there was indeed a mutual mistake. No party

---

[74] Trial Court Opinion, p. 8.

wanted the deed to convey only Lot A, yet that is what the July 22, 2005 deed stated.

The real dispute is not whether there was a mutual mistake but what the proper remedy for this mistake should be. The Powers want the deed to convey Lots A and B in one consolidated parcel; McClain and Prince want the deed to convey Lots A and B in two separate parcels. The court selected the Powers' request on the grounds that the Powers intended to consolidate Lots A and B in their 2002 deed of consolidation, and that McClain and Prince were under constructive notice of this deed. The evidence supports this decision.

The Powers clearly intended in 2002 to obtain a deed consolidating Lots A and B in order to obtain a pool permit. The Powers hired Jade Abstract to prepare a deed of consolidation, and Jade Abstract's documents include a drawing which states: "Lot line to be removed on the line dividing Premises A from Premises B." Lower Merion Township approved the deed, and the Powers recorded this deed with the Recorder of Deeds. Thus, the trial court's reformation of the deed to consolidate Lots A and B into a single parcel is consistent with the Powers' intent.

Furthermore, the record supports the trial court's finding that McClain and Prince did not have actual notice of the 2002 deed at the time of settlement in 2005, but that they did have constructive notice of the 2002 deed at the time of settlement. With regard to actual notice, Prince never

18

knew before settlement that the property had two lots. At the time McClain and/or Prince applied for a loan at Wells Fargo, they never mentioned to Patrick Keenan, their mortgage banker, that the property had two lots or that the lots had been consolidated. Furthermore, the title insurance company hired by McClain and Prince, Stewart Title, failed to find the deed of consolidation during its title search. McClain and Prince did not receive actual notice of the deed of consolidation until 2009, after Wells Fargo commenced foreclosure proceedings.

Notwithstanding the absence of actual notice, McClain and Prince had constructive notice of the deed of consolidation. Both statutory and common law confirm this point.

Over one century ago, our Supreme Court held:

> The general rule is that where a purchaser holds under a conveyance, and is obliged to make out his title through that deed, or through a series of prior deeds, he is charged with constructive notice of every matter connected with or affecting his title, which appears by description of parties, by recital, by reference, or otherwise, on the face of any deed, or upon any public record, which forms an essential link in the chain of instruments through which he takes title or liens which affect the same.

*Volk v. Eaton*, 69 A. 91 (1908). This principle has carried over into statutory law. 21 P.S. §356, entitled "Agreements concerning real property," provides:

> All agreements in writing relating to real property situate in this Commonwealth by the terms whereof the parties executing the same do grant, bargain,

19

> sell, or convey any rights or privileges of a permanent nature pertaining to such real property, or do release the grantee or vendee thereunder against damages which may be inflicted upon such real property at some future time, shall be acknowledged according to law by the parties thereto or proved in the manner provided by law, and shall be recorded in the office for the recording of deeds in the county or counties wherein such real property is situate.

Deeds are "writings relating to real property," *First Citizens Nat. Bank v. Sherwood*, 817 A.2d 501, 504 (Pa.Super.2001), *reversed on other grounds*, 879 A.2d 178 (Pa.2005), and therefore must be recorded with the Recorder of Deeds. 21 P.S. § 357, entitled "Constructive Notice as Result of Recordation," further provides that "[t]he legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers. . .of the fact of the granting of such rights or privileges. . ." Furthermore, the County Code requires the Recorder of Deeds to maintain general indexes of all recorded deeds, 16 P.S. § 9851, and "the entry of recorded deeds. . .in said indexes. . .shall be notice to all persons of recording of the same." 16 P.S. § 9853[75].

These authorities leave no doubt that at the time of settlement in 2005, McClain and Prince were under constructive notice of the 2002 deed of consolidation. The trial court thus had ample reason to treat McClain and

---

[75] *See also Mid-State Bank & Trust Co. v. Globalnet Inel. Inc.*, 735 A.2d 79, 85 (Pa.1999) (party is on constructive notice where he could have learned of facts which might affect title and also by what appeared in appropriate recorder's indexes).

20

Prince as knowing of and accepting consolidation of Lots A and B in the legal description of the property.

In an attempt to avoid the impact of the 2002 deed of consolidation, McClain and Prince argue that this deed only applies to Lot A but not to Lot B.  McClain and Prince claim:

1. A neighborhood plot plan that Michael Powers provided to McClain prior to the agreement of sale includes a diagram stating that Lot B is the "former land of Rush D. Touton."[76]

2.  The former land of Rush Touton shares a boundary with Lot A and is immediately to Lot A's east.

3. The 2002 deed of consolidation states that the entire property being described is bounded by the former land of Rush D. Touton.

4. The land being conveyed, of course, cannot be bound by itself.

5. By process of elimination, only Premises "A" is conveyed by the consolidation deed.

We agree with the Powers that although the consolidation deed's reference to "land of Rush D. Touton" is confusing,[77] the detailed courses and distances in the deed, along with its introductory statement of intent, make clear that the deed consolidated two previously separate lots, lots A and B, into one parcel.  Moreover, the same details provide a complete closed description of the property, i.e., a complete description of every inch of the

---

[76] Exhibit P-6 (neighborhood plot plan).
[77] Brief for Appellees, p. 35.

21

property but not one inch outside of the property. We reject McClain's and Prince's argument that the phrase "land of Rush D. Touton" limits the scope of the deed of consolidation to Lot A.

To reiterate, we hold that the parties made a mutual mistake in the 2005 deed by limiting its legal description to Lot A. The trial court properly reformed the legal description to define a single consolidated parcel in accordance with the Powers' intent and McClain's and Prince's constructive notice of the 2002 deed of consolidation. McClain's and Prince's fallback argument that the 2002 deed only pertains to Lot A is devoid of merit.

V.

We turn to McClain's and Prince's remaining arguments. McClain and Prince contend in their second argument on appeal that "the Powers are estopped from asserting a deed contrary to the one [they] conveyed." In other words, McClain and Prince assert that (1) the Powers verbally promised prior to the agreement of sale that the property had two separate lots, (2) the Powers conveyed a deed at closing with an A/B description that somehow was replaced by a different deed that was recorded, (3) McClain and Prince relied on the Powers' actions to their detriment, and therefore (4) the Powers cannot renege on their promise under the doctrines of estoppel by deed[78], estoppel by warranty[79] and promissory estoppel[80].

---

[78] **See Daley v. Hornbaker**, 472 A.2d 703, 705-06 (Pa.Super.1984) (a grantor is estopped from denying the validity of his deed as against the grantee).

22

McClain and Prince cannot obtain relief on the basis of the Powers' alleged promises prior to the agreement of sale, since the integration clause in the agreement of sale superseded any alleged prior oral representations.[81] *See Brinich v. Jencka*, 757 A.2d 388, 400 (Pa.Super.2000) ("where the parties to an agreement adopt a writing as the final and complete expression of their agreement, alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by the contract").

Nor can McClain and Prince obtain relief on the ground that the deed conveyed at the 2005 closing had an A/B description, and that they relied on this deed to their detriment. The sole basis for this claim is McClain's self-serving testimony about the nature of the deed conveyed at closing. As

---

[79] *See* 21 P.S. § 5 ("A covenant or agreement by the grantor or grantors, in any deed or instrument in writing for conveying or releasing land that he, they, or it "will warrant generally the property hereby conveyed," shall have the same effect as if the grantor or grantors had covenanted that he or they, his or their heirs and personal representatives or successors, will forever warrant and defend the said property, and every part thereof, unto the grantee, his heirs, personal representatives and assigns, against the lawful claims and demands of all persons whomsoever").

[80] *See V–Tech Services, Inc. v. Street*, 72 A.3d 270, 276 (Pa.Super.2013) (to maintain promissory estoppel action, claimant must prove that: (1) the promisor made a promise that it should have reasonably expected would induce action or forbearance on the part of the promisee, (2) the promisee actually took action or refrained from taking action in reliance on the promise, and (3) injustice can be avoided only by enforcing the promise).

[81] Exhibit P-2, ¶ 26 ("it is further understood that this Agreement contains the whole agreement between Seller and buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this Sale").

stated above, the trial court was silent as to whether it believed this testimony. Since the trial court did not make an affirmative finding that it credited this testimony, we, as an appellate court, cannot hold that this testimony formed the basis for an estoppel claim.

In their third argument on appeal, McClain and Prince assert that "the verdict improperly exceeds the scope of the specific relief [that they] requested." Stated another way, McClain and Prince argue that they only asked for a **specific** form of relief in their complaint – reformation of the deed to provide an A/B legal description – and therefore the court had no power to reform the deed in a different fashion. We disagree. When a court reforms a deed on the basis of mutual mistake, it must reform the deed to reflect the intent of the parties. *Dudash*, *supra*. Reforming the deed in this manner might result in a different deed than the moving party wants, but that is the risk that the party takes when it requests reformation. *Id*. As we reasoned above, we think that the manner in which the court reformed the deed was consistent with the Powers' intent and McClain's and Prince's constructive notice of the 2002 deed of consolidation. This remedy is all that McClain and Prince can ask for.

In their fourth argument on appeal, McClain and Prince contend that "the court cannot compel the recording of a deed contrary to Lower Merion Township's ordinances." McClain and Prince argue that the court's 2013 decision violated an ordinance that requires registration of deeds with the

24

township prior to recording. This ordinance, however, has not been in effect since 2008. *See* 21 P.S. § 338.9 (2008 act that repealed statute permitting townships to require registration of deeds prior to recording). Thus, the court's 2013 decision did not run afoul of any live ordinance.

Even if the ordinance remained in effect in 2013, we know of no law that prohibits a court sitting in equity from reforming a deed in a manner that overrides a local ordinance. Furthermore, McClain and Prince admit that "Lower Merion is the aggrieved party because its ordinances are in question." Thus, by their own admission, McClain and Prince are not aggrieved by any violation of the ordinance and thus lack standing to enforce the ordinance in this action.

In their sixth argument on appeal, McClain and Prince assert that the court erred by denying the request in Count III of the complaint to strike the 2010 deed of correction. This issue does not warrant relief. McClain and Prince assert baldly that they "cannot allow a recorded deed to represent to the world that they acquiesced to this erroneous deed. Otherwise they will lose valuable property rights."[82] These empty phrases do not establish that they suffered tangible prejudice as a result of the 2010 deed.

In their seventh argument on appeal, McClain and Prince assert that the 2010 deed of correction eliminates their rights to the entire parcel. This is incorrect. The 2010 deed did not strip them of ownership of the property;

---

[82] Brief for Appellants, p. 32.

it merely consolidated the property into one parcel. And while the 2010 deed failed to mention that they are joint tenants with right of survivorship, the 2013 deed reinstates this language and thus cures any possible prejudice to their rights.

In their eighth argument on appeal, McClain and Prince state that the 2013 deed of correction "continues to contain errors." We disagree. The 2013 deed properly reinstates McClain and Prince as joint tenants with right of survivorship and properly consolidates the property into one parcel.

Finally, in their ninth argument on appeal, McClain and Prince claim that the Powers do not have the ability to execute deeds of correction because they do not hold title. Perhaps they do not have the ability on their own, but the court vested them with the authority to execute a deed of correction within its 2013 order. We see no reason why the court cannot direct the Powers to execute a deed in order to effectuate the court's equitable power of reformation.

For these reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2014

26