149      243
j 33 SC  466

Hill to use, etc., Appellant, v. Joy et al.

Former recovery—Oil lease—Failure to operate.
    Recovery on an oil lease of the royalties provided for therein is a bar to
a subsequent suit for damages for breach, during the same period, of the
implied covenant for proper and sufficient operation.

    Argued April 26, 1892.    Appeal, No. 178, July T., 1892, by
plaintiff, Henry Hill for use of Wm. Pickersgill, Jr., from judg-
ment of C. P. Crawford Co., May T., 1885, No. 29, on finding
of referee for defendants, Thaddeus C. Joy et al.   Before PAX-
SON, C. J., STERRETT, WILLIAMS, McCOLLUM, MITCHELL and
HEYDRICK, JJ.

    Covenant for damages for non-operation under oil lease.

The case was referred to Myron Park Davis under the act of May 14, 1874. The referee found for the defendants affirming, inter alia, their sixth point, which was as follows: " The judgment in the suit No. 129 of May term, 1883, between the parties litigant in this suit is conclusive as to the amount and value of the oil which the defendants ought to have delivered to the plaintiff, and is a bar to any recovery in this action."

Exceptions filed to his report were dismissed by the court below in the following opinion by MEHARD, P. J., specially presiding:

" This case comes before the court on exceptions to the findings of the learned referee. The first question, logically, concerns the validity of defendants' plea of a former recovery.

" This action is covenant, based on the instruments designated in plaintiff's declaration as exhibits A, B, C and D. Those instruments show a contract between the plaintiff and defendants, wherein plaintiff leased to defendants the undivided three eighths of certain lands in Warren county, Pa., for the term of twenty years from May 23, 1868, with the entire and exclusive right to gather, procure, and in any manner obtain petroleum and other oil from said lands, in consideration whereof the defendants agreed ' to yield and pay unto ' the plaintiff three-sixteenths of three-eighths ' of all the oil produced or obtained by them on 90 acres of said land, and five-sixteenths of three-eighths of all the oil produced or obtained by them on the remainder of said land.' The plaintiff, alleging that it thereupon became the duty of defendants to operate for the procurement of petroleum or other oil upon the whole tract of land demised, complains that defendants confined their operations to 90 acres of said land, or the part yielding to plaintiff three sixteenths of three eighths, and neglected and refused to operate on the remainder, or on 190 acres of said land. Wherefore plaintiff claims damages.

" The facts relied upon by defendants as showing a former recovery are as follows, viz.: The plaintiff's interest in the land demised was divested prior to July, 1881. On July 21, 1881, plaintiff brought an action of debt against defendants, at No. 129, Sept. T., 1881, in this court, based on the said contract shown by the said exhibits A, B, C and D. The plaintiff, in his declaration, alleging that he had leased the undivided three

eighths of the land therein described to defendants for the purpose of boring or mining for petroleum or other oil thereon, they 'yielding or paying therefor unto said plaintiff his due portion, to wit: Three-eighths of that certain rent, royalty, or share of the petroleum or other oil obtained therefrom, to wit: Three-sixteenths part of all oil produced or obtained by them (to wit, the defendants), from 90 acres of said land, and five-sixteenths of all the oil produced or obtained by them from the remainder of said land;' and plaintiff further alleging that defendants had entered upon said land and had bored or drilled wells at divers places thereon, and produced or obtained therefrom large quantities of petroleum and other oil, whereby there became due and payable to plaintiff from defendants by virtue of the agreement aforesaid a large amount of rent or royalty from the oil so produced, which was still in arrears and unpaid; therefore plaintiff brought that suit to recover the same. The claim made in that declaration was not confined to plaintiff's rights in 90 acres, or any other distinct part of the land demised. That suit was tried on the merits, and plaintiff recovered a judgment for $21,995.14, which sum was made up of arrears of rent or royalty, in part at the lower, and in part at the higher rate stipulated in the contract.

"It appears from this statement that, in both suits, the parties are the same, that both are founded on the same contract (and that the gist of plaintiff's claim in both is the portion of oil he became entitled to by virtue of defendants' undertaking). It is contended on behalf of plaintiff, however, that the causes of action are separate and distinct, inasmuch as the first suit was brought to recover plaintiff's portion only of the oil actually produced by the defendants, while this case is to recover damages arising from defendants' failure to produce oil to the extent of their duty.

"The limit of defendants' obligation to produce oil is not expressly defined in the contract. The plaintiff's declaration is based on the assumption that the terms of the agreement implied that defendants would operate on all the lands demised, and that this implied covenant was broken when defendants confined their operations to a part of it.

"It is doubtless true that, 'where a right to mine iron ore, or other minerals, is granted in consideration of the reservation

of a certain portion of the product to the grantor, the law implies a covenant on the part of the grantee to work the mine in a proper manner and with reasonable diligence, so that the grantor may receive the compensation or income which both parties must have had in contemplation when the agreement was entered into:' Koch's and Balliet's Ap., 93 Pa. 434, 442; Watson v. O'Hern, 6 Watts, 362; Lyon v. Miller, 24 Pa. 392; Pittsburgh & Connellsville R. R. Co.'s Ap., 99 Pa. 177 ; Penn Iron Co., Limited, v. Diller, 113 Pa. 625, 642.

" This is an inference drawn from the manifest purpose of such a contract, and from the fact that an opposite conclusion would deprive the grantor of the consideration of his grant. It cannot be said to be a distinct contract embraced in the same instrument with the one expressed. It is implied only because it is evidently a part of the contract expressed. The relation between it and the express covenant to pay a portion of the mineral produced is not similar to that between separate installments, successively falling due, under the same instrument. The implied covenant is rather a continuing, inseparable part of the express one, which it directly affects throughout the term of the grant. The relation between them is that between good faith and all executory contracts. Assuming, then, that such a covenant was implied in the contract in suit, it would seem to follow that, when plaintiff recovered in the former action the arrears of his portion of oil produced from the land demised, he recovered either all he was entitled to, or, at least, a part of an entire demand. In either event, the former judgment would be a bar to this suit: Carvill v. Garrigues, 5 Pa. 152; Logan v. Caffrey, 30 Pa. 196; Alcott v. Hugus, 105 Pa. 350; Buck v. Wilson et al., 113 Pa. 423; Marsh v. Pier, 4 Rawle, 273. There is no precise rule for determining what makes an entire cause of action. It depends upon the facts of the particular case, and is often a difficult question. In Carvill v. Garrigues, 5 Pa. 152, the defendant bargained for certain parcels of lumber, a part whereof plaintiff had delivered, when defendant refused to accept the remainder. The plaintiff sued, first, for the price of the part delivered, and, in a second action, for damages resulting from the defendant's refusal of the remainder. It was held that the claims were an entire cause of action. In Corbet et al. v. Evans et al., 25 Pa. 310, defendants

purchased goods from plaintiffs, agreeing to pay for them partly in money, in separate installments, and partly in 'good obligations' of third persons. Certain notes were accordingly transferred to plaintiffs and a part of the money paid, when plaintiffs brought suit for overdue installments, which they recovered. Some of the transferred notes proving unavailable, plaintiffs brought a second suit to recover their amounts, on defendants' contract to pay in 'good obligations.' But it was held that the demands in the two suits were parts of an entire cause of action. In Logan v. Caffrey, 30 Pa. 196, the plaintiff below had wrought for defendant at one dollar a day during parts of 1854 and 1855, but, as was alleged, under the same contract. The plaintiff (Caffrey) then sued defendant for his wages, but at the trial he withdrew his claim for wages between Nov., 1854, and Feb. 5, 1855 ; the record showed this withdrawal, and no evidence was adduced to support that item. Thereafter Caffrey sued for that item, but it was held that, if the work was done under the same contract as the items in the former suit, then the second suit could not be maintained. In Buck v. Wilson et al., 113 Pa. 423, Buck, being indebted to Wilson & Co. in a book account, gave to Wilson & Co. his five notes for the amount, they falling due at various dates. After two of the notes were due, Wilson & Co. sued Buck, declaring in the common counts, and specially for the two notes, and attaching a verified copy of the book account. At the trial the plaintiff sought for and recovered no part of the account embraced in the five notes, save that represented by the first two. Thereafter Wilson & Co. brought a second suit to recover so much of the book account as was represented by the remaining three notes ; but it was held that, inasmuch as the book account was an entire demand, and as both suits were based on it, the first suit was a bar to the second. In that case, Mr. Justice CLARK, delivering the opinion, cites with approval Bendernagle v. Cocks, 19 Wend. 207. The doctrine of that case is, that 'where a party hath several demands or existing causes of action growing out of the same contract, or resting in matter of account, which may be joined or sued for in the same action, they must be joined ; and if the demands or causes of action be split up and a suit brought for a part only, and subsequently a second suit for the residue, the first action may be pleaded in abatement,

or in bar of the second action,' and, as a corollary of that proposition, it was held, in that case, that, where there were breaches of several and distinct covenants contained in the same instrument, and suit was brought, claiming damages for some of the breaches, and subsequently a second action was commenced, claiming damages for other breaches, all the causes of action having accrued at the time of bringing the first suit, that the first action might be pleaded in abatement of the second. Our Supreme Court has expressed a similar doctrine in a number of cases. Thus, in Logan v. Caffrey, supra, it is said: ' Where the consideration is fully executed, and there is no stipulation of severance, the obligation to pay is indivisible and entire, as much so as an obligation to build a house, to make a statue, or to paint a picture:' 30 Pa. 201; Buck v. Wilson, et al., 113 Pa. 430. In both of those cases the doctrine was applied to accounts made up of distinct items, each with its own cost, but all belonging to the same contract.

" At the time when Henry Hill brought the first suit, his interest in the land was divested. Thereafter the defendants could receive nothing further from him, nor become further indebted to him under their contract. Hence, the consideration was fully executed, and there was no stipulation of severance. If the doctrine stated applies to distinct items of an account, arising under the same contract, the more strongly would it apply when the foundation of the second suit is an implied covenant, directly qualifying one on which plaintiff had already recovered.

" It is also true that the evidence that would support the one case would sustain the other. That is well illustrated in Lyon v. Miller, 24 Pa. 392, where, in an action on a written agreement, plaintiff was allowed to recover, apparently without a special count, not only for coal actually mined upon the land leased, but also for what the defendant could and should have mined. It follows that plaintiff's first judgment is a bar to this action. See Bigelow on Estoppel, 44; Com. v. Trimmer et al., 84 Pa. 65, 69.

" Inasmuch as this decision is not based on the merits of plaintiff's claim, it may not be improper to observe that it is very doubtful whether the findings of the learned referee, on the merits, could be at all disturbed.

" The exceptions are dismissed, and the finding of the referee is confirmed. Judgment is accordingly ordered for defendants. Bill of exceptions sealed for plaintiff."

*Error assigned* was, among others, (18) sustaining the referee in his affirmance of defendants' sixth point, quoting it.

*Samuel T. Neill* and *W. K. Jennings*, with them *Haskins & McClintock* for appellant, cited, Powell v. Burroughs, 54 Pa. 329; McKnight v. Manuf. Gas Co., 146 Pa. 185; Cromwell v. Sac Co., 94 U. S. 352; Phila. v. Railway Co., 142 Pa. 494.

*Samuel Dickson* and *Roger Sherman*, with them *Samuel Grumbine*, for appellees.

PER CURIAM, May 23, 1892:

This case has been so well discussed by the learned judge of the court below that nothing remains to be added.

Judgment affirmed.