637 A.2d 979

**J.K. WILLISON, Jr., and Sherry Willison, his wife, Appellees,**

**v.**

**CONSOLIDATION COAL COMPANY, a corporation, Appellant.**

Supreme Court of Pennsylvania.

Argued March 10, 1993.

Decided Feb. 28, 1994.

Reargument Denied March 31, 1994.

Edwin J. Strassburger, Pittsburgh, for appellant.

David C. Hook, Hook & Hook, Waynesburg, Michelle Moses, Asst. Counsel, Dept. of Environmental Resources, for appellees.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, JUSTICE.

This is an appeal, by allowance, from a memorandum decision of the Superior Court which affirmed an order of the Court of Common Pleas of Greene County granting equitable relief to enforce the terms of an oil and gas lease, 403 Pa.Super. 645, 579 A.2d 425. At issue is whether the leaseholder, Consolidation Coal Company (Consol), the appellant

herein, had authority under the lease to discontinue the operation of a certain gas well.

The Willisons, appellees herein, are successors in title to lands that, in 1901, were leased to the predecessor in interest of Consol. The lease, which covered oil and gas rights, provided as follows:

> [T]his lease shall remain in force for the term of ten years from this date, and as long thereafter as oil or gas, or either of them, is produced therefrom....
>
> [Consol] covenants ... to pay ($300.00) three hundred dollars per year for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises.... [Willisons] are entitled to free gas for domestic use by making their own connections at well if gas is found on said farm.
>
> [Consol] is to have the privilege ... *at any time* to remove all machinery and fixtures placed on said premises, and further, upon the payment of $50.00, at any time ... [Consol] shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine, and this lease become absolutely null and void.

(Emphasis added).

Pursuant to the lease, a well was drilled on the property. It produced natural gas. In 1932, the lease was amended to reduce the rent to $50.00 per year in order to forestall the lessee from removing its equipment and plugging the well. The amendment stated that inadequate quantities of gas were being recovered from the well and provided for the reduced level of rent to be paid "so long thereafter as the [lessee] shall find it profitable to maintain its equipment at said well and to transport the gas therefrom for the purpose of market or sale off the premises." The amendment expressly reaffirmed all of the other terms in the original lease.

In 1987, the holder of the oil and gas lease sold its rights to Consol. Consol had previously acquired the rights to coal

under the Willisons' land. Consol acquired the oil and gas lease for the purpose of plugging the well, to allow the extraction of valuable coal which would otherwise have had to remain in place to provide physical support for the operating well. Consol promptly gave the Willisons notice of its intent to plug the well and remove related equipment. The well was still producing natural gas, but not in large quantities. Some of the gas was being used on-site by the Willisons, since the lease entitled them to use the gas, without charge, for domestic purposes.

The Willisons did not want to lose their supply of free gas, and sought therefore to prevent Consol from removing well-head equipment, including shaft casings, and plugging the well. An attempt was made by the Willisons to return Consol's most recent rental payment and terminate the lease. Consol refused, stating that it had no desire to terminate the lease.

The Willisons filed an action against Consol, seeking to enjoin the plugging of the well. The parties filed cross-motions for summary judgment. The trial court granted the Willisons' motion and denied that of Consol, thus enjoining Consol from plugging the well.

Rather than applying the plain language of the lease that allowed Consol to remove its equipment "at any time," the trial court reasoned that there was a need for the oil and gas lease to be construed to ascertain the parties' intent regarding equipment removal. It held that the lease permitted Consol to remove its equipment if there had been a failure of gas production, but that it did not permit the abandonment of a producing well. In reaching this result, the court relied on a number of treatises on oil and gas law. E.g., Kuntz, Law of Oil & Gas § 50.3(c) (1972); Williams, Oil & Gas Law § 674.2 (1988). Those treatises, and the cases cited therein, favor imposing limits on the effect of clauses which provide that termination may occur "at any time," so as to further the extent to which lessors and operators continue to share in the profits from production. The trial court surmised that the purpose of the lease was to share in these profits for as long

as possible. The court relied upon what it perceived to be an implied covenant, derived from decisions in other states, that requires a lessee to continue to operate a well as long as it is profitable to do so. E.g., *Okmulgee Supply Corp. v. Anthis,* 189 Okla. 139, 114 P.2d 451 (1940).

The trial court held that Consol's actions breached its duties under the lease and worked a forfeiture thereof. It ordered Consol to sell the equipment used at the well-site to the Willisons for its fair market value.

On appeal, a divided panel of the Superior Court affirmed on the basis of the trial court's opinion. We reverse.

This case revisits the frequently contested issue of whether to accord a literal interpretation to language chosen by the parties or interpret their language in light of other factors such as surmised purpose, common commercial practice, public interest, etc. Consol contends that the decisions below erroneously relied upon implied provisions, perceived interests of the public, and equitable considerations to reach a result that is inconsistent with the express meaning of the lease in question. See generally *Kepple v. Fairman Drilling Co.,* 532 Pa. 304, 615 A.2d 1298, 1304 (1992) (lease must be interpreted as written rather than revised by a court to accommodate perceived equities).

The decisions below may indeed reflect the commonly followed approach in other jurisdictions, as well as the approach outlined in various treatises on oil and gas law. It is clear, however, that construing the present lease in terms of presumed purpose and other external factors yields a result that is contrary to the terms of the lease. The lease expressly gave Consol a right to remove its equipment "at any time." That right has been extinguished by the courts below.

Our decisions pertaining to the removal of oil and gas well equipment have heretofore focused primarily on the power of a lessee to remove equipment *after* the term of the lease has expired. See *Black v. Hoffman,* 324 Pa. 193, 197–98, 188 A. 149 (1936); *Shellar v. Shivers,* 171 Pa. 569, 33 A. 95 (1895). The present lease, however, expressly provides that it shall

remain in effect as long as Consol continues to produce oil or gas on the premises. Pennsylvania authority concerning the discontinuance and removal of oil and gas production facilities, *during* the terms of applicable leases, is scarce. In the *Black* and *Shellar* decisions there is dictum indicating that a lease provision that equipment can be removed "at any time" should be given effect to allow a lessee to remove equipment, during the term of the lease, without restriction. *Black v. Hoffman,* 324 Pa. at 198, 188 A. at 151; *Shellar v. Shivers,* 171 Pa. at 571, 33 A. at 95. Those decisions, however, involved expired leases and wells that were no longer being operated by the lessees.

While recognizing that a variety of approaches have been followed in other jurisdictions, we shall adhere to our established precedents requiring that the plain meaning of language used by the parties be given effect. A lease is in the nature of a contract and is controlled by principles of contract law. *Amoco Oil Co. v. Snyder,* 505 Pa. 214, 220, 478 A.2d 795, 798 (1984). It is to be construed in accordance with the terms of the agreement as manifestly expressed. *Id.* The accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement. *Id.* As stated in *Steuart v. McChesney,* 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982), "It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."

The express language of the present agreement provided that Consol could remove its equipment "at any time." Consol was not required, therefore, to continue operating its well until gas production was exhausted or until parties other than Consol came to view the well as lacking in profitability. The decisions of the courts below holding to the contrary must be reversed.

Order reversed.

LARSEN, J., did not participate in the consideration or decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice and files a concurring opinion which is joined by CAPPY, J.

MONTEMURO, JUSTICE, concurring.

The majority holds that the express language of an oil and gas lease entitles Consol to remove its equipment from a gas well even if the well can still be operated profitably. My review of the lease leads me to conclude that Consol must operate the well until it is no longer profitable to do so. Therefore, as the question of the well's profitability is a genuine issue of material fact, the grant of Willisons' motion for summary judgement was improper. Accordingly, I would reverse the order of the trial court, which held that Consol had forfeited its rights under the lease, and remand the case for trial on the issue of whether the well can be operated profitably.

The original gas and oil lease gives Consol the privilege of removing all of its machinery and fixtures "at any time". Although we have never had the opportunity to address directly the question of whether this language allows a lessee to remove its equipment from a profitable well, other jurisdictions have found that despite the inclusion of such language in a lease, the lessee must continue to operate the well as long as it's profitable to do so. *E.g., Wade v. Lillard,* 201 Okla. 520, 207 P.2d 771 (1949); *Okmulgee Supply Corp. v. Anthis,* 189 Okla. 139, 114 P.2d 451 (1940); *Sunburst Oil & Refining Co. v. Callender,* 84 Mont. 178, 274 P. 834 (1929). Here, the majority rejected the approach followed by our sister jurisdictions, which recognizes the unique character of leases for the extraction of natural resources, choosing instead to give effect to that portion of the lease which allows Consol to remove its equipment at any time. I also believe that the plain language of the lease controls the outcome of this case. Specifically, I find that the 1932 amendment to the lease, which provides

that a reduced rent will be paid "so long thereafter as the [lessee] shall find it profitable to maintain its equipment at said well and to transport the gas therefrom for the purpose of market or sale off the premises," requires Consol to operate the well until it is no longer profitable to do so. Thus, I conclude that the case should be remanded for a determination of whether the well is profitable.

Finally, because the express language of the lease requires Consol to operate the well as long as it remains profitable, there is no need for this Court to address the issue of whether the language in an oil and gas lease, which empowers the lessee to remove its equipment at any time, is fettered by an implied covenant to operate the well for as long as it remains profitable to do so. When we are squarely presented with this issue, then it will be time to consider whether leases for the extraction of natural resources are to be interpreted differently from other contracts. *See Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986) (the law will not imply a different contract than that which the parties have expressly adopted); *Brown v. Haight*, 435 Pa. 12, 255 A.2d 508 (1969) (coal and oil and gas leases are traditionally interpreted differently because of the varied physical characteristics of the minerals involved); *Hummel v. McFadden*, 395 Pa. 543, 150 A.2d 856 (1959) (the law wisely implies, even in the absence of any express covenant, a covenant to mine and remove coal with due diligence); *Penrose v. Penn Forest Coal Co.*, 289 Pa. 519, 137 A. 670 (1927) (while there was no express covenant as to diligently mining the coal, yet one was implied by the nature of the demise); *Hill v. Joy*, 149 Pa. 243, 24 A. 293 (1892) (where a right to mine iron ore or other minerals is granted in consideration of the reservation of a certain portion of the product to the grantor, the law implies a covenant on the part of the grantee to work the mine in a proper manner and with reasonable diligence, so that the grantor may receive the compensation or income which both parties must have had in contemplation when the agreement was entered into).

CAPPY, J., joins in this concurring opinion.

## *ORDER*

PER CURIAM.

Motion to Quash Appeal denied.