J-A13020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SANDRA L. FISHER, JEANNE E. BELL, NANCY L. JORDAN, MARTHA J. KEENEY AND JOHN R. CUNNINGHAM, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| DONOVAN L. POWELL, D/B/A POWELL SERVICES, L.P., | |
| Appellant | No. 1689 WDA 2014 |

Appeal from the Order September 19, 2014
In the Court of Common Pleas of Greene County
Civil Division at No(s): A.D. No. 889, 2012

BEFORE:  PANELLA, SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 07, 2015**

Donovan L. Powell, doing business as Powell Services, L.P. ("Appellant"), appeals from the order entered on September 19, 2014, that declared an oil and gas lease null and void and entered judgment in favor of Sandra L. Fisher, Jeanne E. Bell, Nancy L. Jordan, Martha J. Keeney, and John R. Cunningham (collectively "Appellees") in this action to quiet title. We affirm.

The trial court set forth the relevant background of this case as follows:

> On May 5, 2014, sitting without a jury, we heard the complaint of [Appellees] asking that we quiet title to a tract of oil and gas lands they own in Whiteley Township. Specifically, they ask that we declare a certain oil and gas lease dated October 30,

2006, and of record in Record Book 404 page 968 in the Office of the Recorder of Deeds of Greene County, to be "deemed abandoned and relinquished". Complaint[, 8/28/12, at 6 (unnumbered)].

In 1967, Mary Louise Cunningham, widow, formerly known as Mary Louise John, conveyed to Harold F. VanDruff and Gertrude VanDruff 295.179 acres of land in Whiteley Township, reserving to herself the oil and gas. Complaint Ex. A. [Appellees] are the heirs of Mary Louise Cunningham. See Deed of Distribution dated March 15, 2006, Record Book 344 page 312. In 2006, [Appellant] approached [Appellees] about a possible lease of their oil and gas. There were some discussions and then [Appellees] signed the "Oil and Gas Lease" dated October 30, 2006. For our purposes, the relevant language is as follows:

> 2. This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for a period of **Three (3)** year(s) and so much longer thereafter as oil or gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee, or as the premises shall be operated by Lessee in the search for oil and gas and as provided in Paragraph Seven (7) following. After Three (3) years an Annual Delay Rental of Fifteen ($15.00) Dollars per acre per year shall be paid to Lessor, which payment shall be made on the anniversary date of the lease.

> 3. This lease, however, shall become null and void and all rights of either party hereunder shall cease and terminate unless, within **twelve (12)** months from the date hereof, a well shall be commenced or placed into production on the premises. A well shall be deemed commenced when preparations for drilling have been commenced. A well shall be deemed placed into production at such time as a well is producing gas in marketable [quantities]. A second well must be commenced or placed into production in the second **twelve (12)** months of the Lease on the same terms and conditions stated herein above.

\* \* \*

8. In the event a well drilled hereunder is a producing well and the Lessee is unable to market to production therefrom, or should production cease from a well drilled on the premises, or should the Lessee desire to shut in producing wells, the Lessee agrees to pay the Lessor, commencing on the date one year from the completion of such producing well or the cessation of production, or the shutting in of producing wells, an advance royalty in the amount and under the terms herein above provided for delay rental until production is marketed and sold off the premises or such well is plugged and abandoned according to law.

According to the "Addendum to the Lease", [Appellees] were to receive $20,000.00 at signing, $10,040.00 on the first anniversary and $10,040.00 on the second anniversary. This money was paid. The Addendum provided for royalties of 20%, but no royalties have been paid. In 2010, [Appellant] tendered delay rental to [Appellees] which was not accepted.

[Appellant] has been in the oil and gas business since 1986, mostly for Equitable, but recently on his own. In 2002, he heard from Greg Barbe, at that time, a Consolidation Coal Company (Consol) landman, that the company owned a well on the VanDruff farm known as the R.F. John Well 462 and that it might be interested in selling. After securing permission from VanDruff, [Appellant] inspected the well and believed it to be capable of producing gas in marketable quantities. He hired Greene County Gas and Oil, Inc., to bail the well and found it could produce six to eight mcf per day, but after another bailing session in 2003, production increased to about 14 mcf per day. He therefore offered to buy and Consol agreed to sell Well 462. The date of the assignment was November 30, 2006, one month after the date of the lease. At the moment of the Consol assignment, [Appellant] was, by his lights [sic], in compliance with the first part of Paragraph Three of the lease. He had a producing well on the land encumbered by the lease. By 2012, says [Appellant], the well was producing approximately 50 mcf per day, although no gas was going to market.

There was also on the VanDruff farm a methane drainage borehole apparently drilled by Consol. On June 6, 2008,

- 3 -

[Appellant] accepted an assignment of this borehole from the VanDruffs. Ex. 120. [Appellant] says he examined the gas issuing from the borehole and estimated its production to be 70 mcf (Powell Affidavit, October 3, 2013). He never measured the flow but relied on his experience with similar wells. He captured a sample on June 1, 2006, and had it analyzed by Gas Analytical, Inc. It proved to be a little high in nitrogen and oxygen, but if blended with the output of Well 462 would be of pipeline quality, in [Appellant's] opinion. [Appellant] believed he had his second well. It is interesting to note that [Appellant] testified that even though he has owned as many as seven gas wells, he has never drilled any. His business seems to be reconditioning old wells.

For years after the execution of the lease, and probably even before, [Appellant] worked diligently to market the gas. The problem of course is transportation. He attempted to reestablish a connection with Equitable Line 311, which had at one time carried the output of Well 462, but was refused because of the poor condition of the line. He inquired of Columbia and Dominion, but their pipelines were some distance away and intervening surface owners denied him permission to cross. Each one of these attempts involved negotiations with various individuals and companies. He even explored the possibility of moving the gas by truck. Ex. 21.

Meanwhile, [Appellees] were waiting for their royalties. On February 4, 2009, Attorney Theron G. Noble, on behalf of [Appellees], wrote to [Appellant] and advised him that the lease was null and void for failure to produce and failure to complete two wells. On November 19, 2009, one of the lessors (the letter is unsigned), wrote to [Appellant] to point out there was no production of oil and gas and no activity to drill a second and therefore the lease was null and void. A second letter was sent on October 20, 2010, demanding evidence that there were two producing wells on the property. Finally, this action was commenced on August 28, 2012.

Trial Court Opinion, 8/5/14, at 1-5 (emphasis in original) (footnote omitted).

As noted, Appellees filed the underlying action to quiet title on August 28, 2012. In response, Appellant filed preliminary objections, and on

September 21, 2012, Appellees filed an amended complaint. Appellant subsequently filed his answer and new matter, and on November 16, 2012, Appellees filed their reply to new matter. On August 19, 2013, Appellees filed a motion for summary judgment that the trial court denied in an order filed on January 13, 2014. The case proceeded to a two-day nonjury trial that commenced on May 5, 2014. On August 5, 2014, the trial court found Appellant in default of his obligations under Paragraph Three of the lease by failing to produce a second well within the second twelve months of the term. Trial Court Opinion, 8/5/14, at 8. Therefore, the trial court concluded that the lease was "null and void." Order, 8/5/14. Post-trial motions were filed and denied, and on September 19, 2014, judgment was entered in favor of Appellees. This timely appeal followed.

On appeal, Appellant raises the following issues for this Court's consideration:

> 1. Did the Trial Court properly place the burden of proof on [Appellant]?
>
> 2. Did the Trial Court properly consider a claim of default of the Oil and Gas Lease because Well #2 was not proven to be capable of producing gas in paying quantities?
>
> 3. Did the Trial Court properly reject the un-contradicted testimony of [Appellant], which had been elicited on cross-examination?
>
> 4. Did the Trial Court properly terminate the Oil and Gas Lease when there had been substantial part performance?
>
> 5. Did the Trial Court properly refuse to enter a non-suit after [Appellees'] case in chief when [Appellees] had offered no

testimony showing a failure to have two wells capable of production, but instead had elicited the un-contradicted testimony of [Appellant] on cross examination that there were two wells capable of production?

6. Did the Trial Court properly disregard the substantial, and uncontradicted evidence that there were two wells producing in paying quantities?

Appellant's Brief at 3-4.

The relevant standard of review of a trial court's decision in a nonjury trial is as follows:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

***Kennedy v. Consol Energy Inc.***, ___ A.3d ___, 2015 PA Super 93, *12 (Pa. Super. 2015) (citations and quotation marks omitted). Moreover, a lease is in the nature of a contract, and it is controlled by principles of contract law. ***T.W. Phillips Gas and Oil Co. v. Jedlicka***, 42 A.3d 261, 267 (Pa. 2012) (citation omitted). The lease must be construed in accordance with the terms of the agreement as manifestly expressed, and "the accepted and plain meaning of the language used, rather than the silent intentions of

the contracting parties, determines the construction to be given the agreement." *Id*. (citations omitted). The party seeking to terminate a lease bears the burden of proof. *Id*. It is well settled that "[w]hen performance of a duty under a contract is due, any nonperformance is a breach." *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. 2003) (citing Restatement (Second) of Contracts § 235(2) (1981)). "If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract." *Id*. However, if the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective. *Id*.

While Appellant has presented six issues, we agree with the trial court that there is, in fact, one overarching issue in this matter, and it involves the termination provisions of Paragraph Three in the lease. Trial Court Opinion, 8/5/14, at 8. The language in Paragraph Three is clear and unambiguous. Paragraph Three expressly provides that the lease shall become null and void unless two wells are commenced or placed into production. "A well shall be deemed placed into production at such time as a well is producing gas in marketable quantities." Oil and Gas Lease, 10/30/06, at ¶ 3. Appellant argues that he is not in breach of the terms of the lease.[1]

_____

[1] Appellant claims in his brief that Appellees failed to provide notice of their belief that he was in breach pursuant to Paragraph Sixteen of the lease. Appellant's Brief at 22. However, this claim is refuted by the record, *(Footnote Continued Next Page)*

The trial court addressed Appellant's argument as follows:

[Appellees] argue that Paragraph Three of the lease, requiring two wells within 24 months of the date of the lease, overrides Paragraph Two, which sets a primary term of three years, and in any event by now over seven years have elapsed, with no production. [Appellant] responds that the lease obliges him only to place in production two wells which he has done, according to the definitions in the lease. Paragraph Three provides: "A well shall be deemed placed into production at such times as a well is producing gas in marketable quantities." Paragraph Two also provides that the secondary term of the lease shall continue so long as "oil or gas . . . are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee." Paragraph Eight of the lease further provides: "In the event a well drilled hereunder is a producing well and the Lessee is unable to market production therefrom . . . the Lessee agrees to pay the Lessor... an advance royalty in the amount . . . provided for delay rental until production is marketed and sold off of the premises . . . [.]"

[Appellant's] position is that the lease obligates him to drill no wells at all but only to place wells into production. A well becomes productive when it produces gas in marketable quantities, which is a judgment to be made by the Lessee alone. Furthermore, the lease authorizes him to shut in the wells indefinitely so long as he tenders a delay rental. He argues he is able to do this because there were in fact two wells on the premises at the time the [Appellees] signed the lease and even long before.

_(Footnote Continued)_ ────────────

because, as noted above, Appellees, on February 4, 2009, through Attorney Theron G. Noble, wrote to Appellant and advised him that the lease was null and void due to his failure to produce and failure to complete two wells. Subsequently, on November 19, 2009, Appellees wrote to Appellant and placed him on notice of his breach. Another letter was sent on October 20, 2010, demanding evidence that there were two producing wells on the property. Finally, this action was commenced on August 28, 2012. Accordingly, Appellant had sufficient notice, and his claim to the contrary is meritless.

We consider these arguments with certain guidelines. An oil and gas lease is a contract to be construed like any other contract. Willison v. Consolidation Coal Company, 637 A.2d 979 (Pa. 1994). The judgment of the lessee is presumed to be in good faith[,] Colgan v. Forest Oil Company, 45 A. 119 (Pa. 1899), at least until the operator shows clearly that he is not acting in good faith. *Id*.

We pause here to review part of the procedural history of this case. The complaint was file[d] on August 28, 2012. An Answer and New Matter was filed on October 31, 2012. Discovery followed. On August 19, 2013, [Appellees] filed a Motion for Summary Judgment and a Brief in Support Thereof. On October 3, 2013, [Appellant] filed an "An Answer to Motion for Summary Judgment", a Brief in Support Thereof, and the Affidavit of Donovan L. Powell. On January 13, 2014, we denied the Motion for Summary Judgment, because a key issue in these kinds of cases implicates the good faith of the lessee, and that concept is generally an improper one for disposition through summary judgment. Coy v. Ford Motor Credit Company, 618 A.2d 1024 (Pa. Super. 1973).

A comparison of [Appellant's] Affidavit with his trial testimony opens a window on [Appellant's] credibility and good faith. In his Affidavit he swore: "Currently, I have installed a two inch pipeline connecting the two existing wells to within twenty-five feet of the EQT Gathering, LLC., Pipeline 311." The wells are approximately 2,500 feet apart. At trial, he testified that no such connection had been made and in fact displayed a picture of coils of plastic pipe which he said he intended to use for that purpose. This testimony was offered some seven months after his Affidavit. *Falso in uno, Falsus in omnibus*. If [Appellant] lied in his Affidavit, and it appears he did, what else is he lying about? The fact finder is free to reject even uncontradicted evidence, especially opinion evidence[,] Taliaferro v. Darby Township Zoning Hearing Board, 873 A.2d 807 (Pa. Cmwlth. 2005) and we specifically reject [Appellant's] opinion that Well 2 is capable of producing gas in paying quantities. The evidence on this point rests entirely on his opinion, and we find it untrustworthy. As there is absolutely no corroborating testimony of the production of Well 2, and we are unable to accept [Appellant's] word on the matter, we find he is [in] default of his obligations described in Paragraph 3 of the lease by failing to produce a second well within the second twelve months of the term.

Trial Court Opinion, 8/5/14, at 5-8 (footnote omitted).

In the argument portion of his brief, Appellant asks this Court to ignore or reweigh the trial court's credibility determinations. Appellant avers that the determination as to whether there was production in marketable quantities establishing the existence of two "wells" should have been based upon his opinion alone, and because he testified as such, the trial court erred. Appellant's Brief at 23-24. However, as set forth above, the crucial detail Appellant fails to address is the trial court's conclusion that Appellant was not credible in his testimony and lied in his affidavit. Trial Court Opinion, 8/5/14, at 8. As discussed earlier, it is not the role of an appellate court to determine the credibility of a witness. **Kennedy**, ___ A.3d at ___, 2015 PA Super 93 at *12. Accordingly, we will not substitute our judgment for that of the factfinder. **Id**. "Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." **Id**.

After review, we agree with the trial court as we have no basis upon which to conclude that the trial court erred or abused its discretion in assessing Appellant's credibility. Appellant's credibility, or lack thereof, was fatal to his defense of Appellees' claim that he breached the terms of the lease. The lease required two wells producing in marketable quantities. Oil and Gas Lease, 10/30/06, at ¶ 3. Appellees filed the underlying quiet title

action because there was only one well on the property as the borehole was not a well, and even if the borehole were deemed a well, it was not producing in marketable quantities. The trial court, concluding that Appellant was not credible, also found that Appellant was not acting in good faith, and thus, he breached the terms of the lease. *Colgan v. Forest Oil Company*, 45 A. 119, 121 (Pa. 1899).

Pursuant to our standard of review, we conclude the trial court's decision and its findings are aptly supported by the record. Therefore, because we agree with the trial court's determination that Appellant breached the terms of the lease, we discern no error in the trial court's order that declared the lease null and void and entered judgment in favor of Appellees. Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/7/2015</u>