J-A35036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

EUGENE AND MARIE SMITH,       :      IN THE SUPERIOR COURT OF
                                      :              PENNSYLVANIA
           Appellants        :
                                        :
              v.                  :
                                        :
T.W. PHILLIPS GAS SUPPLY          :
CORPORATION, SUCCESSOR IN       :
INTEREST TO T.W. PHILLIPS GAS AND   :
OIL COMPANY                       :       No. 375 WDA 2015

Appeal from the Order entered on October 15, 2013
in the Court of Common Pleas of Jefferson County,
Civil  Division, No. 577 CD 2010

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:         **FILED FEBRUARY 19, 2016**

Eugene and Marie Smith ("the Smiths") appeal from the Order granting summary judgment against them and in favor of T.W. Phillips Gas Supply Corporation, successor in interest to T.W. Phillips Gas and Oil Company (collectively, "Phillips").  We affirm.

The trial court summarized the relevant factual history underlying the instant appeal in its Opinion, which we adopt as though fully restated herein. **See** Trial Court Opinion, 10/15/13, at 1-5.

The Smiths filed the within action on June 11, 2010, alleging (1) the expiration of Phillips's gas lease ("the Lease") with the Smiths for failure to produce; (2) breach of the Lease for failure to make royalty payments; and (3)  breach of the implied covenant to develop underground resources. Phillips filed an Answer to the Complaint.  At the close of pleadings and

discovery, the Smiths filed a Motion for Summary Judgment as to their claim alleging the expiration of the Lease for failure to produce. On October 15, 2013, the trial court denied the Smiths' Motion for Summary Judgment, and entered summary judgment in favor of Phillips as to Count I of the Smiths' Complaint. On February 19, 2015, the Smiths discontinued Counts II and III of their Complaint. Thereafter, the Smiths timely filed a Notice of Appeal of the Order denying their Motion for Summary Judgment and granting summary judgment in favor of Phillips, as well as a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

The Smiths present the following claims for our review:

1. Whether the trial court erred by holding that the Lease remains in force and effect pursuant to [**T.W. Phillips Gas and Oil Co. v.**] **Komar**[, 227 A.2d 163 (Pa. 1967)], which held that the payment of a flat royalty, even in the absence of production of oil or gas from the leasehold, is sufficient to extend the term of a lease into its secondary term, when Phillips admits that it failed to tender the flat royalty payments to the Smiths for approximately one year instead of on a quarterly basis as required by the Lease[?]

2. Whether the trial court erred by entering summary judgment in favor of Phillips when Phillips had not moved for summary judgment, and the factual record before the trial court did not support the entry of summary judgment in favor of Phillips, … there being no competent evidence on which to enter summary judgment pursuant to the holding in **Nanty-Glo v. American Surety Co.**, … 163 A. 523 ([Pa.] 1932)[?]

Brief for Appellants at 3.

As this Court has explained,

[o]ur scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court,

- 2 -

reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. ... Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***DeArmitt v. New York Life Ins. Co.***, 73 A.3d 578, 585-86 (Pa. Super. 2013) (citations and quotation marks omitted).

The Smiths first claim that the trial court improperly entered summary judgment where, for one year, Phillips had failed to tender the flat royalty payments required by the Lease. Brief for Appellants at 12. The Smiths assert that the term of the Lease was dictated by the payment of royalties. ***Id.*** Therefore, the Smiths argue, the Lease expired when Phillips failed to make three consecutive royalty payments. ***Id.*** Citing ***Komar***, the Smiths contend that where the lessor's compensation is a fixed amount and unrelated to the volume of production, the duration of a gas lease is determined by the payment of royalties. Brief for Appellants at 13.

According to the Smiths, the Lease terminated upon Phillips's failure to make the royalty payments. *Id.*

The Smiths argue that the trial court improperly relied upon the holdings of our Supreme Court in **Smith v. People's Natural Gas Co.**, 101 A. 739 (Pa. 1917), and **Marshall v. Forest Oil Co.**, 47 A. 927 (Pa. 1901). Brief for Appellants at 14. The Smiths assert that in **Smith**, the lessee had missed only a single payment, and in **Marshall**, there existed an alleged parole agreement that waived the required payments. Brief for Appellants at 14. According to the Smiths, "[m]issing three payments over the course of a year is more factually similar to situations in which a Court has found a forfeiture for failure to perform." *Id.* Finally, the Smiths assert that the equitable prohibition against a finding of forfeiture is usually found on facts where a party fails to perform for weeks, or a month or two at most, "and not three failures to comply over a sustained period of one full year, as found here." *Id.*

At issue in this case is the interpretation of the Lease between the Smiths and Phillips. Our Supreme Court has recognized that

> a lease is in the nature of a contract and is controlled by principles of contract law. **J.K. Willison v. Consol. Coal Co.**, 536 Pa. 49, 54, 637 A.2d 979, 982 (1994). It must be construed in accordance with the terms of the agreement as manifestly expressed, and "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *Id.* (citations omitted). Further, a party seeking to terminate a lease bears the burden of proof. **See Jefferson**

*County Gas Co. v. United Natural Gas Co.*, 247 Pa. 283, 286, 93 A. 340, 341 (1915).

*T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012).

In *Jedlicka*, this Court explained that,

[w]ithin the oil and gas industry, oil and gas leases generally contain several key provisions, including the granting clause, which initially conveys to the lessee the right to drill for and produce oil or gas from the property; the habendum clause, which is used to fix the ultimate duration of the lease; the royalty clause; and the terms of surrender. *Jacobs* [*v. Penneco Energy Corp.*], 332 F.Supp.2d [759,] 764 [W.D. Pa. 2004)] (citing 3 Howard R. Williams & Charles J. Meyers, Oil and Gas Law § 601 (2003)). Further,

[a] habendum clause is used to fix the ultimate duration of an oil and gas lease. 2 Summers, THE LAW OF OIL AND GAS § 281. "The habendum clause of the modern oil and gas lease is the result of a long process of development, in which many influences have aided in shaping its final form," chief of which have been the [distinct] interests of the lessor and lessee, the peculiar needs of the industry and the interpretation and enforcement of certain phrases by the Courts. *Id.* at § 282. Experimentation in the industry for a suitable durational term progressed from definite term leases, which placed the lessee at a disadvantage if production was only attained late in the term or extended beyond the term, to a definite term with an option to renew, to long term leases with conditional clauses extending the term through the production life of the land. *Id.* at §§ 283-287.

*Jacobs*, 332 F.Supp.2d at 765 n.1.

Typically, … the habendum clause in an oil and gas lease provides that a lease will remain in effect for as long as oil or gas is produced "in paying quantities." Traditionally, use of the term "in paying quantities" in a habendum clause of an oil or gas lease was regarded as for the benefit of the lessee, as a lessee would not want to be obligated to pay rent for premises which have ceased to be productive, or for which the operating

expenses exceed the income.  ***Swiss Oil Corp. v. Riggsby***, 252 Ky. 374, 67 S.W.2d 30, 31 (Ky. 1933).  More recently, however, … these clauses are relied on by landowners to terminate a lease.

***Jedlicka***, 42 A.3d at 267-68 (footnote omitted).

Here, the habendum clause of the Lease provided as follows:

TO HAVE AND TO HOLD the said premises for the sole and only purpose of drilling and operating for oil and gas and of storing in any underlying strata therein and withdrawing therefrom gas originally produced from the same or other lands, with the exclusive right to operate the same for the term of twenty years, **and as long thereafter as oil or gas is produced, stored in, or withdrawn therefrom, or operations for oil or gas are being conducted thereon,** including the right to commence operations for drilling a well or other wells at any time during the term of this lease, or at any time oil or gas is being produced, stored in, or withdrawn therefrom, or operations are being conducted thereon, and to complete the same; also the right to re-lease and subdivide the leased premises, together with a right of way to all places of operating, and also a right of way for pipe lines to convey oil, gas, water or steam off, on or across the same as long as said second party, its successors or assigns, desires to maintain the same.

Lease at 1.  The Lease further defined the consideration to be paid by

Phillips:

IN CONSIDERATION of the above demise, [Phillips] agrees to deliver in pipe line unto [the Smiths] the one-eighth part of the oil produced and saved from the premises.

Should any well not produce oil, but gas originally produced or previously stored, and the gas therefrom be sold off the said premises, the consideration to [the Smiths] for the gas from each well from which gas is marketed shall be as follows:

At the rate of two hundred dollars ($200.00) per year while the well shows a pressure 200 or more lbs. per square inch upon being shut in five minutes in two inch

pipe or thirty minutes in larger pipe: to be paid quarterly from completion until abandonment of well.

[The Smiths] except[] and reserve[] from the leased premises[,] through any well thereon producing gas only, provided the gas pressure is high enough, gas for use in one dwelling on said premises, to the extent of 200,000 cubic feet per year, or such part thereof per year as first party requires; subject, however, to the operation and pumping by [Phillips] of its wells and pipe lines on the premises, the [Smiths] to make the necessary connection and assume all risk in using the gas.

*Id.*

The parties do not dispute that Phillips and its predecessors "took the steps necessary over the next 6 decades to retain the full measure of their rights to the entire leasehold." Trial Court Opinion, 10/15/13, at 2. The Smiths allege that for the one-year period prior to filing their Complaint, Phillips made no royalty payments. Complaint, ¶ 9. It is undisputed that Phillips missed payments in October 2009, January 2010, and April 2010. The Smiths claim that during the period of missed royalty payments, the Well was not "producing," thereby effectuating an abandonment of the well and the termination of the Lease. *Id.*, ¶ 21.

In its Opinion, the trial court addressed the Smiths' claim and correctly determined that it lacks merit. *See* Trial Court Opinion, 10/15/13, at 5-8. We agree with the sound reasoning of the trial court, and affirm on this

- 7 -

basis.[1]  *See id.*

The Smiths next argue that the trial court erred by entering summary judgment in favor of Phillips "because the basis for the record is the testimony of Phillips's own witnesses and proffered documents, consideration of which in the context of summary judgment violates the ***Nanto-Glo*** rule; and there exists sufficient facts of record to sustain the Smiths' claim that Phillips abandoned the Lease."  Brief for Appellants at 16.  The Smiths contend that the question of whether Phillips had abandoned the Lease is an issue of fact that must be decided by a jury.  *Id.* at 17-18.  We disagree.

Here, the parties did not dispute that Phillips had failed to tender timely rental payments.  The trial court was required to determine whether the Lease, as a matter of law, allowed forfeiture as a remedy for the failure to tender rental payments.  The trial court correctly determined that the Lease did not provide for forfeiture upon the failure to tender rental

---

[1] Further, our own review of Pennsylvania law discloses that forfeiture clauses in oil and gas leases have been applied where the lessee failed to (a) complete a well on the premises; or (b) pay delay rentals during the *initial term* of the lease. ***See, e.g., Craig v. Cosgrove***, 121 A. 406 (Pa. 1923) (addressing forfeiture clause for nonpayment of rent or for failure to fulfill a covenant for drilling wells in an oil and gas lease); ***Wolf v. Guffey***, 28 A. 1117 (Pa. 1894) (addressing forfeiture clause of lease for failure to complete a well or make rental payment); ***Bertani v. Beck***, 479 A.2d 534 (Pa. Super. 1984) (addressing a delay rental clause, in an oil and gas lease, giving the lessee the option to pay an annual delay rental or forfeit the right to develop the premises); ***Scilly v. Bramer***, 85 A.2d 592 (Pa. Super. 1952) (deeming a forfeiture clause enforceable upon the failure to develop a portion of the premises).  Thus, we discern no error by the trial court.

payments. *See* Trial Court Opinion, 10/15/13, at 8. The **Nanty-Glo** rule is not implicated, and we cannot grant the Smiths relief on this claim.

The Smiths also argue that the trial court improperly entered summary judgment, *sua sponte*, where Phillips had not filed a Motion for such relief. Brief for Appellants at 18. Phillips counters that they moved for summary judgment in their Sur-Reply Brief opposing the Smiths' Motion for Summary Judgment. Brief for Appellee at 27.

Our review discloses that the Sur-Reply Brief is not included in the certified record, or noted on the docket. It is well settled that an appellate court may consider only those facts which have been duly certified in the record on appeal. **Ruspi v. Glatz**, 69 A.3d 680, 691 (Pa. Super. 2013) (citation omitted). Those items that do not appear of record do not exist for appellate purposes. **Stumpf v. Nye**, 950 A.2d 1032, 1041 (Pa. Super. 2008).

Certainly, a trial court should not act as a party's advocate. **Yount v. Pa. Dep't of Corr.**, 966 A.2d 1115, 1119 (Pa. 2009) (citation omitted). "For a trial court to raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon risks depriving the court the benefit of advocacy on the issue, and depriving the parties the opportunity to be heard." **Id.** However, our Supreme Court has declined to reverse a grant of summary judgment in the narrow circumstances where, on appeal, no party is prejudiced, and both parties have been afforded argument on the

dispositive issue. *Id.* As our Supreme Court opined, "[i]t would unduly place form over function to remand the matter for a futile reconsideration below," where the appellate court considered the merits of the issue with the benefit of advocacy from both parties, and a trial court Opinion. *See id.*

Here, both parties briefed and argued the dispositive issue before the trial court and this Court. This Court considered the merits of the issue, with the benefit of the parties' briefs and a trial court Opinion. Further, we discern no prejudice resulting from the trial court's grant of summary judgment. Under the narrow circumstances of this case, we decline to reverse the trial court's grant of summary judgment on this basis.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016